ROSE COLVIN, Appellant, v. RAYMOND MILLS, Respondent, No. 41520—
232 S. W. (2d) 961.

Division Two, September 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, October 9, 1950.

*Roscoe Anderson, Norman Bierman* and *Cullen Coil* for appellant; *Anderson, Gilbert, Wolfort, Allen & Bierman* of counsel.

*Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter* and *Wm. H. Allen* for respondent.

LEEDY, J.—Action by Rose Colvin against Raymond Mills to recover damages in the sum of $45,000 for injuries sustained by her when as a pedestrian in the City of St. Louis she was struck by defendant's automobile. The jury returned a verdict in favor of defendant; judgment went accordingly, and plaintiff appealed. The amount in dispute gives this court jurisdiction.

The casualty occurred about 1:15 P. M., March 1, 1948. The streets were dry, the sky was overcast, but the visibility good. Grand Boulevard extends north and south. Lying in the middle thereof are two parallel sets of streetcar tracks, the east tracks being for northbound cars, and the west ones for southbound cars. Franklin Avenue extends east and west. It enters Grand from the east, makes a jog to the south, and, as it continues west of Grand, is known as Enright Avenue. There are double streetcar tracks in the approximate center of Enright-Franklin at the point of intersection with Grand, that intersection being irregular on account of the jog mentioned. There is a safety zone near the northwest corner of the intersection, it being located immediately west of the southbound track and north of Enright. It is 98 feet in length. There is only one traffic light at the intersection. It governs only southbound traffic. It has only one light—red—which is either on or off. There are no traffic lights for northbound traffic, nor for westbound traffic, nor for eastbound traffic. Grand is 50 feet wide and the streetcar tracks occupy 15 feet in the center thereof; that is, the distance from the west rail of the southbound track to the east rail of the northbound track is 15 feet. The space between the rails of each set of tracks is 4 feet 10 inches, and the space between the two sets of tracks (that is, between the west rail of the northbound tracks and the east rail of the southbound tracks) is 5 feet 4 inches. Streetcars of the type herein involved are 46 feet in length, and 8 feet 4 inches in width. The overhang of such streetcars is 1 foot 9 inches.

Plaintiff alighted from a southbound streetcar at the center exit door and stepped into the safety zone. She desired to cross to the east side of Grand. Instead of walking south to the front end of the standing streetcar in order to cross at the intersection, she walked north in the safety zone west of the streetcar. As she did so, the standing streetcar obstructed her view of Grand to the east. She turned to her right and walked behind the streetcar and undertook to cross Grand at a point where there was no intersection and no cross-

walk marked in the street. So much for the facts as to which there is no dispute.

Plaintiff's version of the accident was that she looked at the traffic light when she alighted from the streetcar, and it was red; that she then walked northwardly in the safety zone to the buttons which form the north boundary of the safety zone. She looked again at the same traffic light and it was still red. She then started to walk at a normal rate of speed of 2 or 2-½ miles per hour (taking steps of 20 to 24 inches from heel to heel) in a northeasterly direction from the safety zone. When she was at a point a short distance to the north of the buttons, and in about the middle of the northbound tracks, she looked to her right to see the condition of the traffic light (which she had thought existed for northbound as well as southbound traffic), and saw defendant's automobile for the first time. Defendant's automobile was then about 50 feet, or 3 or 4 automobile lengths to the south, traveling north in the northbound car tracks. Plaintiff, on seeing defendant's automobile, and another automobile to the rear and in the lane to the right of defendant's automobile, stopped and took 1, 2 or 3 steps backward. Defendant's car continued on toward her at an estimated speed of 20 to 25 miles an hour, without slackening its speed, without swerving, and without sounding a horn, and struck her. If defendant had slowed down just a little, or swerved just a little, she would have been safe, as all she needed was another half a step, or a step, to get out of the way. After the impact she was lying near the west rail of the northbound tracks with part of her body between the west rail of the northbound tracks and the east rail of the southbound tracks. From the point of first contact with defendant's car, plaintiff was knocked northwardly not more than 2 or 3 feet.

The submission was solely under plaintiff's assignment of humanitarian negligence, her recovery instruction having told the jury, in substance, that if defendant saw, or in the exercise of the highest degree of care could have seen plaintiff in a position of imminent peril in time thereafter to have stopped, or slackened speed, or swerved, or sounded a warning, and by so doing could thereby have avoided striking and injuring plaintiff, and that he failed to do so, and that such failure was negligent, and such negligence directly and proximately caused defendant's automobile to strike and injure plaintiff, the verdict should be for plaintiff, and this though the jury should also find and believe that plaintiff was herself careless and negligent in getting into said position of imminent peril.

The single assignment on this appeal presents the question of the propriety of defendant's instruction No. 2, which the parties refer to as a converse humanitarian instruction, reading as follows:

"You are instructed that if you find and believe from the evidence that the plaintiff moved suddenly from behind a streetcar into a place

of danger toward the path of the automobile of defendant, and that at said time his automobile was so close to plaintiff that in the exercise of the highest degree of care, with the means and appliances at hand and with reasonable safety to himself, he could not avoid collision with the plaintiff, then the defendant was not guilty of negligence and your verdict will be in his favor. In other words, you are instructed that before defendant can be found guilty of negligence in connection with the injuries of plaintiff, you must find that defendant, in the exercise of the highest degree of care in the operation of his automobile, had a reasonable opportunity to avoid the accident in question, and if you find and believe from the evidence that plaintiff stepped so closely from behind the streetcar and directly toward the path of and in such close proximity to defendant's moving automobile so that defendant, in the exercise of the highest degree of care and with the means and appliances at hand, was unable to avoid contact between the automobile and plaintiff, then the injuries which plaintiff suffered by said contact were not due to the negligence of defendant and your verdict should be in favor of defendant.''

In determining the propriety of the instruction, the evidence is to be viewed in the light most favorable to defendant. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S. W. 2d 461. With this rule in mind, we state defendant's version of the accident, as reflected by his own testimony, thus: That as he proceeded north on Grand and crossed Franklin, and approached the scene of the accident, a streetcar (by inference, the one on which plaintiff had been a passenger) was pulling away (to the south) from the safety zone, and another one, southbound, was pulling up and stopped somewhere near the middle of the safety zone; that the presence of the second streetcar at that point "obscured the north end of the safety zone" and made it impossible to see the buttons marking the north boundary of the safety zone; that his car was traveling at approximately 15 miles per hour when he reached the north side of Franklin; that he continued to drive north with his left wheel just a little over the west rail of the northbound track, and when he was "about 3 or 4 feet from the rear of the streetcar, Mrs. Colvin appeared at the back of the streetcar * * * she was right behind it, I would say, at the most 3 or 4 feet behind it;'' that when he first saw her in his line of travel in the streetcar tracks, "she was in the middle of a stride just right over my left fender; *in fact, when I saw her I hit her.*'' He testified that when he saw her, he blew his horn and stepped on the brakes; that he did not know whether he had succeeded in slowing his speed before the impact; that plaintiff was struck by the left headlight and fender of his car; that he "imagined" he traveled about 10 feet after the impact, and when the car came to a stop, Mrs. Colvin was about 3 feet in front of his car. He further testified that there was "but very little'' space between the left side of his car and the right side

of the streetcar. On cross-examination, he testified that when the second southbound streetcar came to a stop, the front end of his automobile was approximately even with the front of the streetcar; that when he first saw Mrs. Colvin, she was in the middle of a stride *across the west rail of the northbound tracks directly in front of his automobile,* with one foot on one side of the west rail of the northbound track and one foot on the other side; that he saw her and hit her "almost instantaneously;" that he could not tell whether she was stepping backward or forward in the second that he saw her; that when he first saw her, she was some 5 to 8 feet away from him; that he stopped in approximately 15 to 20 feet after he first saw her; that he was looking straight ahead; that he did not swerve his car in either direction because "I didn't have time to, when I saw her I hit her."

The principal attack upon the instruction (which is reiterated in different forms under numerous subheads) is that it failed to submit discoverable peril. In this connection, it is strenuously urged that the instruction does not cover the factual situation shown by the evidence, is misleading, and did not state the converse of, nor negate all the specific charges of humanitarian negligence submitted in the disjunctive in plaintiff's instruction No. 1. Plaintiff relies on such cases as Shields v. Keller, 348 Mo. 326, 153 S. W. 2d 60; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S. W. 2d 461; State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. 2d 527; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S. W. 2d 892; Reiling v. Russell, 345 Mo. 517, 134 S. W. 2d 33, and others. On the other hand, defendant contends that it is, in effect, nothing more than the converse of plaintiff's principal instruction; that it conversely hypothesized a fact situation, supported by the evidence, to which the humanitarian rule could have no application, and which, if found by the jury to be true, constituted a complete defense. Defendant cites Johnston v. Ramming, 340 Mo. 311, 100 S. W. 2d 466; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. 2d 373; Wells v. Raber, 350 Mo. 586, 166 S. W. 2d 1073; Oliver v. Morgan, (Mo.) 73 S. W. 2d 993; Causey v. Wittig, 321 Mo. 358, 11 S. W. 2d 11 (dissenting opinion approved in Borgstede v. Waldbauer), and other cases.

As defendant's brief points out, "the sharp issue was whether plaintiff emerged from behind the streetcar *in time for defendant to have seen her* and by the exercise of the highest degree of care to have avoided the collision." The instruction must be scrutinized in the light of this issue, with a view to determining whether it submits such proposition in a fair and adequate way. In Borgstede v. Waldbauer, supra, the death of plaintiff's decedent resulted from his having walked into the side of defendant's automobile. Unlike the instruction in the case at bar, the formula there approved was that if the defendant did not know, and by the exercise of the highest degree of care

*could not have known,* that decedent was about to walk into the side of his said automobile, or *was in a position of imminent peril,* etc. In Wells v. Raber, supra, the ground of attack upon the instruction was that it did not submit specific facts which would show lack of negligence on the part of the defendant. The court held to the contrary. The instruction, after hypothesizing the position of the parties, as shown by the evidence, and that defendant was operating her automobile without negligence on her part, required the specific finding "that the shed or building prevented Ann Raber from *seeing* Ray Wells until it was too late for Ann Raber to avoid his injury."

It is conceded that the challenged instruction is but a rescript (with certain slight changes in verbiage, plus the complete omission of the opening paragraph) of one held not improper under the facts adduced in Johnston v. Ramming, supra, ▆▆▆ and defendant leans heavily upon that case as controlling authority here. The facts there in judgment involved an 8-year-old child who was injured as the result of being struck by defendant's automobile when in crossing a narrow street, with cars parked on both sides thereof, she suddenly came into defendant's view from behind and "around in back of" a motor vehicle traveling in the opposite direction. She was "running like blazes * * * with her head down and ran directly ("about 6 feet") in front of defendant." But as the instruction appeared in that case, it contained (in the paragraph omitted here) a specific discoverable peril clause. Witness the language: "The court instructs the jury that the defendant Ramming was not required, under the law, to stop or attempt to stop his automobile, to slow same down, swerve it, or to sound an alarm on it until he saw, or by the exercise of the highest degree of care *could have seen,* that the plaintiff was in imminent danger or peril of being struck by the defendant's automobile, and then the defendant Ramming was required only to use the means and appliances at hand to try to avoid striking the plaintiff, Jean Johnston, with his automobile." The original files in the case disclose that the instruction then proceeded thus: "*And in this connection* you are instructed," etc. (Here follows the substance of what defendant in this case has used as the whole of his instruction No. 2.) It is no answer to say that the omitted portion was a mere preface constituting an abstract statement of a rule of law, and hence unnecessary to be included; this is so because the jury would undoubtedly understand and construe the fact matters which followed in the second portion as being dependent upon, and governed by such general rule.

The measurements touching the width of the streets and the track layouts, including the overhang of the cars, as hereinabove set out, were stipulated, and hence as much a part of defendant's evidence as his own testimony. If, as he testified, when he first saw plaintiff, she was in the middle of a stride across the west rail of the north-

bound tracks, and 3 or 4 feet north of the rear end of the streetcar, plaintiff had then traveled northeastwardly into the street at least 3 feet 7 inches (from the point of clearance of the overhang to the west rail of the northbound track), plus half a stride (about 1 foot), or a total of 4 feet 7 inches, when there was nothing to have prevented defendant from seeing her. Such being the case, can the instruction be said to fairly present the converse of plaintiff's humanitarian submission with respect to the element of discoverable peril? Contrast the facts above outlined with the situation in Johnston v. Ramming, supra, hereinabove referred to, and as to which the court observed that under defendant's evidence he acted ''at the instant he first saw her [plaintiff], *and could have seen her.*''

In Shields v. Keller, supra, an instruction similar in form to the one in Wells v. Raber, supra, was disapproved as not warranted by the evidence. In reaching that conclusion, the court said: ''Furthermore, the trouble also here is that defendant did not see plaintiff at all until he was only a few inches from his fender, so that plaintiff had walked at least two or three feet beyond the parked car before defendant did see him; although he had previously been in a position, where in the exercise of the highest degree of care, it is at least reasonable to believe he could have seen him. * * * Defendant would have been entitled to a converse instruction as to his ability in the exercise of the highest degree of care to see plaintiff in a position of imminent peril (in time); but a proper one should fully cover the actual situation according to what was shown by defendant's evidence.'' Such is the situation in the case at bar. While the instruction was doubtless intended to require the jury to make a finding of fact contrary to one of the basic facts of the humanitarian rule under plaintiff's submission, i. e., that defendant saw, or by the exercise of the highest degree of care could have seen plaintiff in a position of imminent peril, in time thereafter, etc., to have avoided striking and injuring plaintiff, we think the matter of defendant's duty to act in relation to the time plaintiff's position of peril arose, and she was first seeable, was not made clear. '' * * * the defendant can either submit the exact converse of plaintiff's humanitarian submission; or of any essential element thereof, or he can submit facts (shown by his evidence) which would disprove one or more of the basic facts of plaintiff's humanitarian submission. See Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. 2d 562; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. 2d 742. If the defendant chooses to submit facts (shown by his evidence and different from plaintiff's version) they must have the legal effect of showing there could have been no humanitarian negligence on his part.'' Janssens v. Thompson, 360 Mo. 351, 228 S. W. 2d 743, 750.

In Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S. W. 2d 200, the following converse humanitarian instruction in a fact situation comparable to the case at bar was approved: "You are instructed that if you find and believe from the evidence that plaintiffs' son ran across Pine Street from the rear of a westbound automobile and ran immediately in front of and in such close proximity to defendants' approaching truck, if you so find, that the driver thereof could not, in the exercise of the highest degree of care have avoided a collision after he saw or by exercising the highest degree of care could have seen the boy in a position of imminent peril, then your verdict must be in favor of the defendants."

In that case the only issue under the facts was whether the driver could have seen the boy in time to have avoided the accident, plaintiffs claiming the driver could have seen the boy when he left the curb. It will be observed that the instruction there approved embraced, in plain, direct and unmistakable language, the element of discoverable peril—the respect in which the instruction now under scrutiny is fatally defective.

The judgment is reversed, and the cause remanded. All concur.