248 S.W.2d 628 (1952)
SILVER
v.
WESTLAKE.
No. 42497.
Supreme Court of Missouri, Division No. 1.
April 14, 1952.
Motion for Rehearing or to Transfer to Denied May 12, 1952.
*629 M. A. Ochsner and M. Q. Silver, St. Louis, for appellant.
George F. Heege, Clayton, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied May 12, 1952.
VAN OSDOL, Commissioner.
In this action for $15,000 damages plaintiff has appealed from the judgment entered upon verdict for defendant.
Plaintiff, a boy twelve years old, was injured when the bicycle on which he and his brother Ronald, eight years old, were riding came into contact with defendant's Chevrolet delivery coupe or truck driven by defendant's employee on Ann ("Annie") Avenue near Spencer Place in St. Louis County. Plaintiff in his petition declared upon primary negligence and negligence under the humanitarian rule.
Herein upon appeal plaintiff-appellant contends the trial court erred (1) in giving Instructions Nos. 2 and 4 requested by defendant; and (2) in allowing a witness to testify on behalf of defendant, the defendant having under oath answered in the negative a question in interrogatories, propounded prior to trial, concerning the knowledge of defendant of the identity of witnesses present at the scene of the casualty. The review of the contentions of error in giving the instructions requires a careful examination of the evidence.
Ann (Annie) Avenue, a north-south street, intersects Suburban Avenue, an eastwest street. Ann Avenue, approaching from the south, "jogs" to the westward at the intersection; and vehicles moving northwardly on Ann Avenue make a partial "S" curve while crossing Suburban at the intersection. It is one hundred and fifty-six feet north from Suburban to the south side of an alley which approaches and intersects Ann Avenue on the east side thereof. Spencer Place approaches Ann Avenue from the west and intersects only the west side of Ann Avenue. It is a little over eighty-seven feet from Suburban north to the south side of Spencer Place. Ann Avenue is paved with concrete twenty feet in width. Shoulders three feet wide, composed of oiled earth or cinders, are on either side of the concrete pavement. A sidewalk four feet wide extends along the east side of Ann but does not extend across the alley. A two-story building, occupied by Pahl's Cleaners, is situate on the east side of Ann and south of the alley. The evidence tends to show that defendant's automobile came into contact with plaintiff's bicycle at some point on Ann Avenue north of Spencer Place, but the evidence introduced by plaintiff and defendant, respectively, is irreconcilable as to the point of collision and as to the manner in which the collision occurred.
Plaintiff testified that he was riding his bicycle in the neighborhood east of Ann Avenue. His younger brother, Ronald, was seated on the crossbar in front of plaintiff. The brother Ronald was holding on to the handle bars and both of his feet were on the right side of the bicycle. They came down the alley approaching Ann Avenue from the eastward, passed out of the alley, turned south on the sidewalk on the east side of Ann. "I went on to the sidewalk on the shoulder, by Pahl's Cleaners." He stopped on the shoulder, that is, the area between the sidewalk on the east side of Ann and the east edge of the pavement. The shoulder is "cinders and oil and a lot of stuff." He was not "on this concrete at all." He stopped right there "where these two windows are." The windows referred to are two windows in the west wall of the building occupied by Pahl's Cleaners, and apparently ten or twelve feet south of the alley. He stood there astride his bicycle for "around five seconds."
Plaintiff further testified, "I was standing up and my brother was sitting on the cross-bar and then I looked this way (north) and then I looked that way (south) and then I looked this way (north) again and *630 there was nothing there, and my brother says, `Look out,' * * * and I looked over there (south) and this car was coming around the corner (the curve at Suburban) and he was making a screeching sound all the time and then he came over here and he hit me." Plaintiff said that as defendant's automobile approached from the south, "it just zig zagged all over the place." It was first on one side of the street and then on the other. Plaintiff's brother, Ronald, testified, supporting the testimony of plaintiff. No other witness for plaintiff testified of having observed the actual collision, although a witness for plaintiff testified that defendant's vehicle, having been driven across Suburban, veered to the westward "coming pretty close" to the fence east of a residence located on the northwest corner of the intersection of Suburban and Ann. The witness further testified there was no automobile parked south of the alley and west of the Pahl building.
Defendant's driver testified that he had stopped to visit with a friend at a point about seventy-five feet south of Suburban and then proceeded northwardly to and through the intersection at Suburban and was moving along Ann Avenue at a speed of twenty-thirty miles per hour. He said a truck was standing a little south of the alley on the east side of Ann. The truck was "standing on the cinders." Another truck headed south was parked on the west shoulder of the street somewhat to the north of the alley. When he was about fifty feet away, he "first saw these two boys coming out of the alley on a bicycle." (At another time while testifying, defendant's driver said he was about one car's length away from the south side of the alley when he first saw the boys.) The boys "started down Ann Avenue, south, right towards me. * * * They were on the concrete. * * * Well, I took my foot off the gas and I applied the brakes and the boys cut back in front of me in the same way I was goingheaded north directly across the front of me, and I applied my brakes and I tried to keep from hitting them, and I was fairly away from them, and at the same time by me skidding, they run between me and this other truck" headed south on the other side of Ann. The driver further testified the collision occurred on the west side of the paved portion of Ann "about two feet" from the west edge of the concrete.
Azzie Lee Hill, a witness for defendant, testified that she was sitting in a room of a house just west of where the casualty occurred. She stated she was looking eastwardly through a window, and saw the movements of the defendant's automobile and plaintiff's bicycle as they approached the point of collision and collided. She said, "Montell (Montell Nelson, defendant's driver) came, he was coming down the street and these kids came out of the alley right across, and Montell put on the brakes and it kind of pulled his car like this, and the littlest little boy was riding the bicycle, and the biggest little boy was on the rear end and when the accident occurred I seen Montell, and he was putting on the brakes, and the kids pulled out in front of him * * *." She said, "they came right across the alley and went in front, and they didn't look to see where they were going, and Montell couldn't see them * * *."
A deputy sheriff testified that defendant's car made skidmarks thirty-six feet in length (including the length of the car). The skidmarks started on the east half of the concrete pavement, and then veered northwestwardly across the center line to the west side of the pavement. The skidmarks extended to the point where the car was brought to a stop. The skidmarks "were more on a straight line and then curved to the west." The automobile was brought to a stop headed in a northwest direction approximately ten feet north of the alley. The "biggest majority" of defendant's car had passed to the west side of the center line of the pavement. The left headlight was broken. Plaintiff was lying "right over the edge" of the pavement and about four feet in front of defendant's car.
Plaintiff had alleged and the trial court submitted defendant's negligence under the humanitarian rule in failing to stop, slacken speed, or swerve defendant's vehicle after the driver thereof saw or by the exercise of the highest degree of care could have seen plaintiff in a position of imminent peril. Plaintiff also alleged defendant's primary *631 negligence in driving at a dangerous rate of speed, in driving off the pavement and upon the shoulder of the street, and in failing to observe plaintiff in time to stop and slacken the speed of the automobile. The petition alleged that plaintiff and his brother were standing and holding the bicycle at a point on and along the shoulder "midway between the alley which runs into Ann Avenue on the east side thereof and a point opposite Spencer Place where it runs into Ann Avenue on the west side thereof."
The trial court submitted plaintiff's case to the jury upon humanitarian negligence by Instruction No. 1. The instruction hypothesized plaintiff's position of imminent peril as follows,
"The Court instructs the Jury that if you find from the evidence that * * * said bicycle with plaintiff thereon was on Annie Avenue at or near the alleyway on the east side of said Annie Avenue and slightly south of said alley, and that plaintiff was standing astraddle his bicycle on the the shoulder off of the east side of the concrete, and that while so standing * * * he and his bicycle were struck by an automobile owned by the defendant and then and there operated by his agent and servant mentioned in the evidence, and that plaintiff thereby sustained the injuries mentioned in the evidence; and that if the Jury further find from the evidence that before plaintiff and said bicycle were so struck by said automobile that he and said bicycle were in imminent danger of being struck and being injured thereby by said automobile * * *."
And the trial court submitted plaintiff's case to the jury upon primary negligence, as plaintiff had pleaded, by Instruction No. 3, which is in part as follows,
"The Court instructs the jury that if you find and believe from the evidence that the defendant, his agent and servant, operated the automobile mentioned in the evidence on and along Annie Avenue in a northwardly direction thereon * * * and that plaintiff was standing astraddle his bicycle on the shoulder off the east side of the concrete street, and that while so standing * * * the defendant's agent and servant negligently turned the automobile onto said shoulder at a high and dangerous rate of speed, if so, and that defendant's agent and servant negligently failed to observe the plaintiff in time to have stopped or slackened the speed of the automobile and avoided striking plaintiff * * *."
Defendant-respondent has made no point that the evidence did not justify the submission of primary and humanitarian negligence.
And in behalf of defendant the trial court gave Instructions Nos. 2 and 4, which are as follows,
Instruction No. 2. "The Court instructs the jury that the defendants by and through their driver, Montell Nelson, were not required under the law to stop or attempt to stop the automobile in question, to slow the same down, to swerve the same or to sound an alarm on same until said Montell Nelson saw, or by the exercise of the highest degree of care could have seen that the bicycle with the plaintiff thereon was approaching and in immediate danger or peril of being struck by the said automobile, and then said driver was required under the law to exercise the highest degree of care in using the means at hand to avoid striking said bicycle; in this connection you are instructed that if you find and believe from the evidence that the bicycle on which plaintiff was riding was driven so suddenly towards the path of said automobile and in so close proximity thereto as to make it impossible for the driver of said automobile to prevent the same from colliding with the bicycle on which plaintiff was riding by the exercise of the highest degree of care in the operation thereof, then you cannot find for plaintiff under Instruction Number One." (Our italics.)
Instruction No. 4. "The Court instructs the jury that if you find and believe from the evidence * * * the automobile of defendants was being operated northwardly on Ann Avenue and that at a point on said *632 Ann Avenue where it intersects with an alley near Spencer Place, the plaintiff was riding a bicycle out of said alley on to said Ann Avenue and collided with the automobile of the defendants and that as a result of said collision the plaintiff was injured, * * * and if you further find and believe from the evidence that at said time and place the bicycle being operated by the plaintiff suddenly turned in the path of said automobile and collided with or ran into the left headlight of said automobile, and if you further find and believe that at said time and place the plaintiff failed to look or observe where he was operating said bicycle, and if you further find and believe from the evidence that said failure, if any, of the plaintiff to look and observe was the sole cause of the collision and injuries of plaintiff and without any negligence whatsoever on the part of the driver of defendants' automobile, then the Court instructs you that the plaintiff is not entitled to recover and your verdict must be for the defendants."
(1) Appellant's contention of error as to defendant's Instruction No. 2 is directed to that part of the instruction hypothesizing "plaintiff * * * was approaching and in immediate danger or peril" of being struck by defendant's automobile. (The language "immediate danger or peril," as used in the instruction, was no doubt used in the sense of "imminent peril.") Appellant contends the quoted clause should have hypothesized, "plaintiff * * was approaching or in immediate danger or peril of being struck." Plaintiff-appellant contends the language, "approaching and in immediate danger or peril," as used in the instruction, too narrowly limits the zone of peril. But we believe appellant is mistaken in this contention. The quoted language of the instruction did not too narrowly limit the zone of perilthe quoted language unduly broadened or extended the zone of peril; and had the instruction been couched in the language as suggested by appellant, it also would have unduly broadened the zone of peril. A defendant may have the duty to act under the humanitarian rule when an oblivious plaintiff is approaching the path of a defendant's moving instrumentality, that is, a plaintiff being oblivious may come into imminent peril while approaching the pathway of a defendant's vehicle. The fact of obliviousness thus extends or broadens the zone of peril beyond the path of defendant's vehicle. But a defendant has no duty to act while plaintiff is merely approaching a position of imminent peril. Defendant has the duty to act only when plaintiff comes into and is in imminent peril, although, as stated, a plaintiff may come into and be in a position of imminent peril, because of his obliviousness, at a place where or at a time when he is approaching but is yet some distance away from the path of a defendant's instrumentality. The time when or the place where an oblivious plaintiff (in approaching the path of defendant's moving instrumentality) comes into a position of imminent peril is ordinarily a jury question. A defendant has the duty to act when plaintiff is at a place during his approach of the pathway of a defendant's moving vehicle where or when it was or should have been reasonably apparent to defendant that plaintiff was oblivious of the approaching vehicle and was intent upon moving into its pathway. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S.W.2d 798; Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Hilton v. Terminal R. Ass'n of St. Louis, 345 Mo. 987, 137 S.W.2d 520; Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S.W. 2d 593; Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304; Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519.
It is true that defendant's Instruction No. 2 has the fault as did the plaintiffs' instructions in the Buehler, Hilton and Evans cases, of broadening or extending the danger zone to include plaintiffs'"approach" to positions of imminent peril. But in the instant case, plaintiff could not have been prejudiced by defendant's instruction in so improperly broadening the zone of peril. The stated hypothesis, "approaching and in immediate danger or peril," in defendant's Instruction No. 2, erroneously recognized a duty of defendant to act sooner than required by the humanitarian rule, of which error plaintiff has no occasion to *633 complain. In the case of Shumate v. Wells, 320 Mo. 536, 9 S.W.2d 632, 635, cited by plaintiff-appellant, a defendant's instruction (No. 5) advised the jury that defendant was not required to act until plaintiff's automobile was driven directly in front of or in close proximity to defendant's streetcar. The instruction improperly limited or narrowed the zone of peril. In the Shumate case this court pointed out that "place of danger" (that is, "position of imminent peril") is by no means synonymous with "directly in front of or in * * * close and dangerous proximity to the approaching car." And see Burke v. Pappas, 316 Mo. 1235, 293 S.W. 142; and Collins v. Beckmann, Mo.Sup., 79 S.W.2d 1052, also cited by plaintiff-appellant.
Relating to defendant's Instruction No. 4 to which the parties have referred as a "sole cause" instructionalthough the instruction is not to be taken as a model in any technical sense in any case, yet its technical faults were not prejudicial to plaintiff in the instant case inasmuch as the instruction hypothesized facts which if true destroyed plaintiff's case on the factual theories plaintiff had pleaded and submitted. The instruction hypothesizes facts which, if a jury found to be true, would necessarily preclude a finding of the facts which plaintiff's evidence tended to establish in support of plaintiff's primary negligence and humanitarian rule submissions. We are reminded that plaintiff had pleaded, testified, and submitted that he was standing astride his bicycle at a point off the pavement and south of the alley. This was the position or place at which plaintiff put himself by the allegations of his petition, by his own unequivocal testimony, and by his submissions of both primary and humanitarian negligence. Defendant offered evidence tending to prove plaintiff came westwardly out of the alley and suddenly moved into the pathway of defendant's car. As stated by plaintiff-appellant in his brief, "Plaintiff based his instructions on plaintiff's evidence which showed that plaintiff was standing still on the east shoulder of Annie Avenue straddling his bicycle when he was struck by the automobile of defendant's driver. Defendant's instructions are based upon defendant's evidence which purported to show that the plaintiff and his bicycle were moving westwardly from an alley on to the travelled, concrete portion of Annie Avenue when he was struck." If the jury found, as apparently the jury did, that plaintiff came out of the alley and suddenly turned into the path of defendant's vehicle, there were no factual bases for plaintiff's case as he had pleaded, as he had testified, and as he had submitted. In this case wherein the respective factual theories of plaintiff and defendant as to the place and manner in which the casualty was brought about are wholly inconsistent each with the other, if the jury considered defendant's evidence as true, defendant could not have been negligent in a primary sense or under the humanitarian rule as submitted by plaintiff. Our case is unlike the cases of Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, 896; and Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961, in which latter cases the real issue was whether the respective plaintiffs were observed or observable in time for defendants to have acted in averting the casualties. In the Bootee case the erroneous "Instruction No. 2" required but a general finding, "without negligence upon the part of the defendant or its operator", a finding similar to the instruction in the instant case, but it is also true the instruction in the Bootee case did not hypothesize facts which excluded negligence of defendant in the manner charged in the petition, and submitted in plaintiff's principal instruction. In the Colvin case [360 Mo. 1181, 232 S.W.2d 963] the erroneous "instruction No. 2" did not contain any requirement of a "not due to any negligence of defendant as submitted in the principal instruction" finding; and the instruction, in attempting to hypothesize facts contrary to a stated basic fact of plaintiff's humanitarian submission, did not make clear the matter of defendant's "duty to act in relation to the time plaintiff's position of peril arose, and she was first seeable".
It has been said a defendant can either submit the exact converse of plaintiff's humanitarian submission, or of any element thereof, or defendant can submit facts, supported by his evidence, which *634 would disprove one or more of the basic facts of plaintiff's humanitarian submission. Janssens v. Thompson, 360 Mo. 351, 228 S. W.2d 743; Colvin v. Mills, supra; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562. See also Rembusch v. Prebe, 358 Mo. 409, 215 S.W.2d 433, a primary negligence case, wherein the factual theories as to how the collision came about were basically irreconcilable. Plaintiff and defendant in the Rembusch case each charged and introduced evidence tending to prove the other was negligent in driving on the wrong side of the highway. Even though "Instruction A" given in behalf of defendant Prebe was technically erroneous, yet, if the jury found the facts as the defendant's evidence tended to prove and as submitted by his Instruction A, the jury's finding necessarily excluded the facts as plaintiff's evidence tended to establish.
(2) Some months prior to trial, plaintiff had interrogated defendant as authorized by Section 510.020 RSMo 1949, V.A.M.S., asking for the names and addresses of all persons whose names were obtained by defendant or his employee at the scene of the accident, and for the names and addresses of all persons defendant or his employee saw or knew were present at the time of the accident. To which defendant answered he did not know the name of any such witnesses.
The defendant's witness, Azzie Lee Hill, had been seen by defendant's driver at the scene of the casualty. Defendant's driver, having been called to the witness stand by plaintiff in rebuttal, testified that he had asked Azzie "did she see the accident," and Azzie had said "she didn't want to have anything to do with it." Thus the knowledge (that defendant's driver had seen Azzie at the scene of the casualty) came to plaintiff prior to the conclusion of the trial. By deposition defendant's driver had failed to reveal the presence of Azzie at the scene of the casualty. At the trial he explained he had known Azzie and knew she was there, but he "didn't know her name." There was no showing that, when the interrogatory was answered, defendant actually knew Azzie had witnessed the casualty, or knew that Azzie had thereafter gone out on the street and was at the scene of the collision. Of course, it is possible defendant was intentionally concealing the fact that Azzie saw and was at the scene of the accident, but the fact, if so, was not demonstrated in the trial court, although plaintiff in his unverified motion for a new trial assigned misconduct of defendant in answering the interrogatory. Plaintiff did not object to or move to strike the testimony of Azzie. Nor did plaintiff ask for time or for a continuance to enable him to further investigate the facts of the case, or to investigate and prepare to attack Azzie's credibility as a witness; nor did plaintiff request that any penalty be imposed upon defendant because of the asserted misconduct of defendant, which plaintiff thereafter asserted for the first time in his motion for a new trial. Having at the time failed to make known to the trial court his objection to the testimony of Azzie, and having failed to move to strike her testimony or to make any request that any other action be taken, plaintiff surely waived his objection and should not be heard to later contend it was error to permit her to testify.
In this connection, however, we wish to emphasize the significance and in no way to minimize the importance of interrogatories as provided in Section 510.020, supra, in finding out what the facts are so that, prior to trial, the controversial issues can be ascertained and the preparation for trial and the trial limited to themall to the end of substantial justice between the parties litigant. State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907; Gerber v. Schutte Investment Co., 354 Mo. 1246, 194 S.W.2d 25.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.