International Building at 722 Chestnut in the city of St. Louis.

It is well settled that "the nature of a lawyer's profession necessitates the utmost good faith toward his client and the highest loyalty and devotion to his client's interests." In re Thomasson's Estate, 346 Mo. 911, 144 S.W.2d 79, 83. The relation between attorney and client is highly fiduciary and of a very delicate, exacting and confidential character, requiring a very high degree of fidelity and good faith on attorney's part. Laughlin v. Boatmen's Nat. Bank of St. Louis, Mo.Sup., 163 S.W. 2d 761; Bybee v. S'Renco, 316 Mo. 517, 291 S.W. 459, 461. A breach of fidelity to a client's interest constitutes constructive fraud. Fiske v. Buder, 8 Cir., 125 F.2d 841; In re Conrad, 340 Mo. 582, 105 S.W. 2d 1, 10.

In the case of In re Conner, 357 Mo. 270, 207 S.W.2d 492, 499, this court said: "Misconduct of attorneys in converting and using money held in a fiduciary capacity has been before us in other cases. We have uniformly held such conduct justifies disbarment. In State Bar Committee v. Stumbaugh, Mo.Sup., 123 S.W.2d 51, 53, this Court said: ' "Whether so provided by statute or not, it is always a ground for the disbarment of an attorney that he has misappropriated the funds of his client, either by failing to pay over money collected by him for his client or by appropriating to his own use funds intrusted to his care." * * * "The law requires that a lawyer shall maintain a higher moral standard than simply to avoid conviction of embezzlement or larceny. His clients are entitled to rely on his honesty and on his devotion to their interests." ' "

A careful review of the entire record in this case convinces us that the charges made against respondent have been sustained by the overwhelming weight of the credible evidence. Accordingly, respondent should be permanently disbarred from the practice of law. It is so ordered.

All concur.

Etta LEVIN, Respondent,

v.

Virgil E. CALDWELL, Appellant,

and

Irwin KOTELOV, Appellant.

No. 44745.

Supreme Court of Missouri.
Division No. 1.

Jan. 9, 1956.

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Kansas City, for appellant Caldwell.

Henry W. Buck, Karl F. Schmidt, Albert C. McClain, Kansas City, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, of counsel, for appellant Irwin Kotelov.

John R. Gibson, Kansas City, for respondent Irwin Kotelov.

Jerome B. Stone, Hershel H. Goodman, Kansas City, Hanna, Hurwitz, Goodman & Stone, Kansas City, of counsel, for respondent Levin.

HOLMAN, Commissioner.

[1] Personal injury action in which plaintiff, Etta Levin, obtained a verdict for $5,000 against defendants, Virgil E. Caldwell and Irwin Kotelov. Also involved was a cross-claim by which Caldwell sought to recover $11,000 from Kotelov for his personal injuries and damage to his car. Verdict on this claim was for Kotelov. Each defendant has appealed from plaintiff's judgment and Caldwell also appeals from the adverse judgment on his cross-claim. This latter controversy gives us jurisdiction.

The collision in question occurred at about 3 p. m. on Sunday, July 6, 1952, at the intersection of 47th Street and the northbound lane of The Paseo in Kansas City, Missouri. Plaintiff was riding in a Pontiac automobile being driven by her nephew, defendant Irwin Kotelov. They were going north on Paseo at a speed variously estimated from 20 to 35 m. p. h. Plaintiff stated that the car was in the center of this (one-way) street which was 40 feet wide. The north and southbound lanes of The Paseo are separated by a parkway 108 feet wide; 47th Street is 48 feet wide at this point. The use hereafter of the word "intersection" will be understood to mean the intersection of 47th Street and the *northbound* lane of Paseo. According to plaintiff, when the Kotelov car was about 60 feet from the point of collision, she saw the Chevrolet driven by Caldwell coming east on 47th about five feet from the intersection and, either at that time or a little later, told Irwin to "watch out." Each car proceeded into the intersection and the Pontiac struck the Caldwell car at about its' center, causing it to be turned over. The point of collision was about the center of Paseo and a little south of the center of 47th Street. Plaintiff and defendant Caldwell were both injured, but no issue upon this appeal requires that we consider the extent of these injuries.

The traffic at this intersection was controlled by signal lights which exhibited successively the usual green, yellow and red lights. It is obvious that the primary cause

of this collision was that one of the drivers proceeded into the intersection when a red signal light was being exhibited in his direction. Each, however, testified positively that the signal light governing traffic in his direction was green at the time he drove into the intersection. This was an issue to be determined by the jury, although the positive testimony of the three disinterested witnesses who saw the lights was that the green light was being exhibited on Paseo and the red on 47th Street.

Defendant Caldwell testified that he was driving in the southbound lane of Paseo and made a left turn onto 47th Street and then drove east to the point of collision. He stated the signal light was green as he approached 47th and that it flashed yellow just as he made the left turn, and that before entering the intersection with the northbound lane he looked at the signal light and it was green. There was shrubbery in the parkway that would obscure Caldwell's view to the right (south) until the front of his car was fairly close to the intersection. When his car was about five feet from the intersection he saw the Kotelov car about 75 to 80 feet to the south. He said Kotelov's car was being driven with its left side about ten feet from the west curb of Paseo. At that time Caldwell said he was going 18 m. p. h. and Kotelov was driving about 35 m. p. h. He assumed that Kotelov would stop, but when the Pontiac was 35 or 40 feet away Caldwell realized the danger of collision and attempted to speed up and thus avoid being struck. Kotelov testified that when he first saw the Chevrolet it was already in the intersection and was only 10 or 15 feet away. He did not attempt to swerve but "hit the brakes" and was able to skid the wheels for three feet before his car struck the Chevrolet. Additional evidence may be detailed in connection with the points that will be hereinafter discussed.

We will first consider Caldwell's appeal from plaintiff's judgment. At the outset he complains of the error in giving plaintiff's Instruction No. 2 which authorized a verdict against said defendant upon a finding of primary negligence in either of three respects, as follows, "that defendant, Virgil Caldwell, failed to use the highest degree of care in that he failed to keep a vigilant watch ahead and laterally for other vehicles traveling on, upon and across said intersection, or operated said Chevrolet automobile at an excessive rate of speed under the circumstances then and there existing, or failed to obey the red traffic signal governing eastbound traffic, if you so find * * *." It is argued that the negligence of Caldwell in failing "to keep a vigilant watch" was not submissible under the evidence. We shall assume that the hypothesized finding of failure to keep a lateral lookout for cars "traveling on, upon and across said intersection" may be construed to include cars approaching the intersection as was the car driven by Kotelov.

In determining the issue presented it is essential that we consider the evidence relating to the location of Caldwell's car on 47th Street at the time he could have first seen the Pontiac appoaching the intersection. Plaintiff first saw the Caldwell Chevrolet when it was four or five feet west of the intersection. Caldwell and Kotelov were both called as witnesses by plaintiff. On this issue Caldwell related that the shrubbery at the southwest corner of the intersection obstructed his view to the south and that he couldn't see very well until he got fairly close to the intersection. Kotelov testified that the bushes obstructed his view of the Caldwell car, although they did not come out to the curb and a person could see "a little bit" to the west. No witness was examined directly upon the issue of the exact location of the front end of a car proceeding in the path used by Caldwell when the driver could first see a car being driven in the center lane of Paseo 75 or 80 feet to the south. An examination of the whole record and the material statements in all the briefs, however, causes us to conclude that all parties assumed that the point was about five feet west of the intersection. There was no oral testimony that would place the point any farther back. The only evidence from which it might be possible to conclude otherwise is a photograph of

the intersection which shows the shrubbery in question. However, from a mere examination of this photograph, we are unable to conclude that Caldwell could have seen the approaching Pontiac when his car was appreciably farther back from the intersection than the five feet indicated.

■ Caldwell testified that he saw the Kotelov car when the front of his car was four or five feet from the intersection. There is no evidence to the contrary. If, as we have indicated, there was no substantial evidence from which a jury reasonably could have found that Caldwell could, in the exercise of the highest degree of care, have seen the Kotelov car sooner than he did see it, then, it must follow that there was no substantial evidence that Caldwell failed to keep a lookout and hence the submission was error.

■ Complaint is also made of the submission in this instruction, "or failed to obey the red traffic signal governing eastbound traffic, if you so find." It is asserted that this had the effect of telling the jury that the eastbound light was red and only left it to the jury to find whether said defendant failed to obey the said signal by entering the intersection. Since it is admitted that Caldwell entered the intersection without stopping, it is urged that this submission had the effect of directing a verdict for plaintiff against said defendant.

Unquestionably, the quoted words do not clearly submit the issue intended. The submission should have specifically required a finding that the traffic signal for eastbound traffic was red and that Caldwell failed to obey said signal by entering the intersection. However, it may be that in view of Caldwell's positive testimony that the light was green and that he accordingly entered the intersection without stopping, the jury would have understood the submission as a requirement that they find that the light was red. If this were the only defect in the instruction we would give serious consideration to the question as to whether this error would require a reversal. There is no occasion for so doing, however, in view of the other error noted.

In considering the appeal of defendant Kotelov, we note that he complains of Instruction No. 3 which directed a verdict against him upon a finding that he "failed to use the highest degree of care in that he failed to keep a vigilant watch ahead and laterally for other vehicles traveling on, upon and across said intersection, or operated said Pontiac automobile at an excessive rate of speed under the circumstances then and there existing." Kotelov argues that there was no evidence to support the submission of excessive speed and that since the two assignments of negligence were submitted in the disjunctive, the entire instruction is therefore erroneous. It should be made clear that plaintiff is not relying upon the violation of an ordinance. In this situation, a determination of the question of whether the speed of the Kotelov car was excessive would depend upon the circumstances and conditions existing in this area at the time of the accident. In this connection, it may be of interest to note that a police officer was permitted to testify, without objection, that the municipal speed limit at this point was 35 m. p. h.

The plaintiff and Kotelov each testified that the speed of the Pontiac was from 20 to 25 m. p. h. Caldwell stated that it was about 35 m. p. h. Ronald Downer, who was driving a car following Kotelov, said Kotelov was going 30 m. p. h. This defendant correctly asserts, in effect, that driving conditions were substantially ideal at that time and place. The streets were dry and the day clear. The traffic was not unusual or heavy and Kotelov was approaching an intersection where traffic was controlled by signal lights.

It should not be overlooked, however, that Caldwell testified that the signal light was green as he entered the intersection while driving east on 47th Street. This, of course, would be sufficient to authorize a finding that the red signal light was being exhibited to the south on Paseo. We think this was a definite circumstance that could be considered on the issue of excessive

speed. We are not unmindful that it would support a submission of the specific negligence of Kotelov in failing to obey the red signal. That theory, however, is not preclusive and plaintiff may rely upon this evidence to support a submission on excessive speed. It should be obvious, therefore, that evidence to the effect that Kotelov entered the intersection at a speed of even 20 m. p. h., in the face of a red signal light, would be substantial evidence from which a jury could reasonably find that he was operating said car at an excessive rate of speed. In considering evidence that the signal was red, the jury could also weigh the effect of the evidence that the shrubs on the southwest corner of the intersection were somewhat of an obstruction to Kotelov's view.

■ In connection with the foregoing assignment, said defendant raises a far more serious question. His brief contains the following: "It is submitted, however, that the jury was asked to find that the Kotelov car was being driven at an excessive rate of speed under the circumstances then and there existing without being informed as to the existence of any surrounding circumstances which would make the operator of a motor vehicle guilty of negligence when driving at a rate within the lawful speed limit." We must therefore consider whether this instruction should have specifically hypothesized the aforementioned fact which would have permitted a finding that the speed was excessive. This question must always be determined by a consideration of the particular facts and circumstances in each case. Facts, concerning which the evidence is in conflict, that are *essential* to support a finding of negligence should be hypothesized in a verdict-directing instruction. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972.

■ We have concluded that the instruction under consideration should have required a specific finding of the essential fact which we have held would have supported a finding of the ultimate fact or issue of excessive speed. There was a direct conflict in the evidence on the question as to which driver had the green light. It would therefore appear that, in fairly submitting the issue of Kotelov's negligence in driving at an excessive rate of speed, there should have been a submission of the fact that a red signal was displayed when he approached and moved out into the intersection. We conclude that the general submission was reversible error.

■ Since it appears that this case will likely be retried, we deem it prudent to mention that plaintiff cannot recover against both defendants under instructions based upon the hypothesized fact that each entered the intersection against the red light. If, upon another trial, there is a submission against Caldwell of negligence in failing to obey the red traffic signal, and a submission against Kotelov of excessive speed predicated upon a finding of the essential fact that he entered the intersection when the red signal was being exhibited in his direction, the jury must be instructed that it cannot return a verdict against both defendants based upon a finding for plaintiff on each of these submissions. This is not to say that plaintiff is precluded from recovering against each defendant on assignments of negligence properly submitted.

Each of the defendants has complained of various other alleged errors in the instructions. We deem it unnecessary to extend this opinion by a discussion of these points. Before another trial plaintiff will have an opportunity to re-examine the instructions given at her request and to make such corrections as she may think necessary in view of the attack made thereon by defendants.

The cross-claim of defendant Caldwell against Kotelov was submitted by Instruction No. 9 upon humanitarian negligence. It directed a verdict upon a finding that defendant Kotelov saw, or by the exercise of the highest degree of care could have seen, defendant Caldwell in a position of imminent peril in time thereafter to have slackened the speed of, or swerved his automobile to the left, and thereby have avoided the collision.

The court, at the request of defendant Kotelov, gave what is referred to as converse Instruction No. 14 which is as follows: "With reference solely to the cross-claim filed on behalf of the defendant, Virgil Caldwell, the court instructs the jury that there was no duty resting upon the defendant, Irwin Kotelov, the driver of the Pontiac automobile mentioned in the evidence, to slacken the speed of said automobile and swerve said automobile to the left *until it became apparent* in the exercise of the highest degree of care on the part of the defendant Irwin Kotelov, that the defendant, Virgil Caldwell, was in a position of imminent peril on the highway referred to in the evidence, and that said defendant, Virgil Caldwell, was unable to extricate himself therefrom. Therefore, if you find from all of the evidence the perilous position of the defendant Virgil Caldwell, if any, *became apparent to the defendant, Irwin Kotelov,* when the said Pontiac automobile which the defendant, Irwin Kotelov was driving, was so close to the automobile being driven by the defendant Virgil Caldwell, that the speed thereof could not be slackened and said automobile swerved to the left by the exercise of the highest degree of care, then the said defendant, Virgil Caldwell, is not entitled to recover on his cross-claim and your verdict must be for the defendant, Irwin Kotelov." (Italics ours.)

Caldwell contends this instruction was erroneous because it totally ignored the element of constructive lookout or discoverable peril.

Defendant Kotelov was entitled to an instruction which would submit the converse of Caldwell's humanitarian submission or of any essential element thereof. Instruction No. 9 placed a duty on Kotelov to act when he *saw,* or in the exercise of the highest degree of care *could have seen,* Caldwell in a position of imminent peril. Instruction No. 14 excused Kotelov from liability if his car was so close to the Caldwell car, when Caldwell's perilous position *became apparent* to him, that he could not take the specified action and avoid the collision.

We have concluded that Instruction No. 14 was erroneous because it omitted the essential element of discoverable peril and thereby, of course, conflicts with Instruction No. 9. The phrase "became apparent" is clearly not synonymous with the phrase "could have seen." Apparent means "clear or manifest to the understanding; plain; evident; palpable." Webster's New International Dictionary, 2d Ed. A reasonable construction of the words used in the converse instruction would lead to the conclusion that it based Kotelov's duty to act upon what he actually knew and not upon what he should have known in the exercise of the highest degree of care. Wilt v. Moody, Mo.Sup., 254 S.W.2d 15; Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961; Fullington v. Southeastern Motor Truck Lines, Mo.App., 254 S.W.2d 246. In this respect the instruction was clearly erroneous.

In support of his contention that this instruction was not erroneous, Kotelov relies principally upon Sackmann v. Wells, Mo.Sup., 41 S.W.2d 153, 155, and the case of Carle v. Akin, Mo.Sup., 87 S.W.2d 406, which followed the Sackmann case. The instruction in the Sackmann case was criticized by the court as being "somewhat vague and indefinite" but, when construed with other instructions, was held not to be erroneous. While there was some difference in the verbiage used in that instruction, we concede that the Sackmann opinion is definite authority for Kotelov's assertion that the instant instruction should be upheld. However, in the recent case of Wilt v. Moody, supra, this court carefully considered the Sackmann opinion and concluded that it was not sound and that the instruction therein (similar to the instant one) was erroneous, primarily because it omitted the essential element of discoverable peril. The Wilt case should have been ample notice that the Sackmann case and cases following it would no longer be followed by this court. We approve of the conclusion reached in the Wilt case and the Sackmann case, in the respect under consideration, is hereby overruled and said case, and those approving and following it,

should no longer be considered authoritative. In view of the conclusion we have reached, we need not consider the contentions of Caldwell that Instruction No. 14 is also erroneous in other respects.

■ Defendant Kotelov next asserts that any error that may have existed in Instruction No. 14 was harmless as defendant Caldwell failed to make a submissible humanitarian case on his cross-claim. He argues that there is no evidence from which it could reasonably be found that Kotelov had the ability, after he could have discovered Caldwell in a position of imminent peril, to have avoided the collision by slackening speed or swerving.

■ In determining this question we will consider the evidence most favorable to Caldwell unless it contradicts his own testimony or is at war with his own theory of the case. It is conceded by Kotelov that Caldwell was in a position of imminent peril when his automobile emerged from behind the screen of shrubbery at the southwest corner of the intersection because his car could not then be stopped before reaching the point of impact. At that time he was four or five feet west of the intersection going 18 m. p. h. and (according to the estimate of Caldwell) Kotelov was from 75 to 80 feet to the south and going 35 m. p. h. We think there was evidence which would have authorized a finding that Kotelov could have stopped his car before reaching the point of impact and, if so, a submissible case was certainly made on failure to slacken speed. Kotelov testified that he first saw the Caldwell car when his (Kotelov's) car was from 10 to 15 feet from the place of collision. In that short space he was able to apply his brakes and skid the wheels for three feet before impact. There was other evidence that a car going 35 m. p. h. could be stopped in 58.2 feet after the brakes were actually applied. Therefore, if Kotelov had applied his brakes when his car was 55.2 feet farther back, a jury could reasonably have found that the car would have been stopped at the point of collision. This evidence would permit a finding that the car could have been stopped in 70.2 feet. Since Kotelov could have seen the Caldwell car in a position of imminent peril when Kotelov was 75 to 80 feet south of the point of impact, it follows that he could have avoided the collision by using the means available in slackening his speed.

Since we have held that Caldwell made a submissible case on the issue of Kotelov's humanitarian negligence in failing to slacken his speed, we see no necessity for a determination of the issue of whether the evidence would support a submission of his failure to swerve and thus avoid the collision. There was little direct evidence on that issue. We observe, however, that there is evidence from which it could perhaps be inferred that in the course of traveling 75 or 80 feet Kotelov might have swerved a sufficient distance to the left to have avoided the impact. However, the evidence will no doubt be more fully developed upon another trial and at that time it should not be difficult to determine the submissibility of this issue.

The judgment is reversed and the cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.