Alvin BARNES and Amy Barnes, Husband and Wife, Respondents,

v.

Ernie JONES, Appellant.

No. 45916.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1957.

Jimmie B. Trammell, Dexter, for plaintiffs.

Dearing, Richeson & Weier, Will B. Dearing, Hillsboro, for defendant.

WESTHUES, Judge.

Plaintiffs, Alvin Barnes and Amy Barnes, as husband and wife, instituted this action against Ernie Jones to recover damages for the death of their minor son, Robert Lee Barnes, who met his death when struck by a car driven by Jones. A trial resulted in a verdict and judgment in plaintiffs' favor for the sum of $12,000. Defendant appealed to this court.

Defendant briefed four points. In two of these, it is claimed that the evidence did not justify the submission of the case to a jury. In the other points, defendant contends that instructions P–2 and P–5, given by the court, were erroneous.

Plaintiffs, in answer to defendant's contentions, filed a brief in which they claim that the evidence was sufficient to justify a verdict in their favor under the humanitarian doctrine under which the case was submitted. Plaintiffs, in their brief, did not answer defendant's points with reference to the instructions. In oral argument, plaintiffs' counsel conceded error in the giving of instruction P–2. An examination of the evidence has convinced us that the trial court did not err in submitting the case to a jury under the humanitarian doctrine.

The event which gave rise to this lawsuit occurred on September 1, 1955, at the junction of U. S. Highway 60 and Route CC, about 3 miles west of Morehouse in Stoddard County, Missouri. Highway 60 is an east-west road and CC a north-south road. The time was about 9 o'clock in the morning; the weather was clear; the roads were dry. Highway 60 at this point is a "black-top road" for a width of 24 feet and is straight in both directions from the junction with Route CC which is a gravel road. A car bearing an Indiana license plate was being driven eastwardly toward the junction and was followed by a truck driven by Russell Long; a car driven by Mrs. Robert Hope was following the truck. The Indiana car, after it passed Route CC, was stopped on the south shoulder of Highway 60. The deceased got out of this car on the south side thereof and the Indiana car was then driven away east on Highway 60. About this time, the truck was turned south on Route CC. The driver testified he saw Robert Lee start

across the highway but could not see him after that because he, Long, had by this time made a turn south on Route CC.

Mrs. Hope, who was following the truck, testified that she had slowed the speed of her car to about 30 miles per hour; that she saw the truck turn south; that she saw Robert Lee "lope" across Highway 60 and saw him when he was struck at the north edge of the pavement of Highway 60 by defendant's car which was being driven westwardly on Highway 60. It is plaintiffs' contention that the evidence justified a finding that the defendant could have discovered deceased in a position of imminent peril in time with the means at hand and with safety to himself to have averted striking Robert Lee. All the evidence was to the effect that Robert Lee was oblivious of the approach of defendant's car.

Mrs. Hope, on cross-examination, was asked about what she saw Robert Lee do after he left the Indiana car. Note her testimony:

"Q. Now, he got out of the automobile and then he didn't go in front of that automobile but he came back and went in behind of it, didn't he? A. Yes, sir, he did.

"Q. And in the mean time, that motorist, having let the boy out, as I visualize this occurrence, he pulled back onto the pavement and he started on east, now, am I correct about that? A. Yes, sir, he did.

"Q. And the boy started to run across that highway, didnt he? A. Yes, sir.

"Q. Now, he ran in a straight line without pausing at any time, isn't that true? A. Well, the best of my knowledge he did, loping."

Eugene Harris, a State Highway Patrolman, testified that after he arrived on the scene, the defendant stated to him that, " 'I didn't see the fellow get out of the other car. The first time I saw him he was running across the road in front of me looking the other way. My horn didn't even attract his attention, if it had, he would have stopped and I could have swerved and missed him. After I hit him I didn't apply my brakes as I was afraid I would turn over.' "

The defendant gave the following evidence:

"Q. Now, I will ask you to tell this jury and His Honor, according to your best judgment, as you approached this gravel road where this unfortunate tragedy happened what would you say was your speed, Mr. Jones? A. Well, I would say about sixty miles.

*     *     *     *     *     *

"Q. Now, I'll ask you to state whether you were aware of the presence of any eastbound traffic as you were coming up towards this gravel road? A. Yes, sir, there was one car pulled off there and stopped.

"Q. Now, this first car that pulled off and stopped, was it completely off of the main portion of 60 and on this gravel road? A. I believe so, yes.

*     *     *     *     *     *

"Q. Now, as you got up there closer did the stopped car move any? A. He started to pull out, yes, sir.

"Q. He started to pull out? A. Back on the highway.

"Q. Now, as he started to pull out did you, at any time, see this young man who was hit out there that day, Mr. Jones? A. Right then I didn't.

"Q. Alright. I want you to tell these twelve folks here in the jury box where was this young man when you saw him? A. He was coming from the center of the highway across to the other side. I saw a car pull out ahead of him which distracted my attention. That's the first time I had seen the man that had got out of the car.

\*   \*   \*   \*   \*   \*

"Q. Now, did you, when you saw this young man over on the south part of the highway approaching the center-line, I want you to describe his gait for us? How was he moving, Mr. Jones? A. Well, sort of a lope or a trot.

"Q. Could you tell whether it was a boy or a man at that time? A. No, I thought it was a man up until after the accident.

"Q. You thought it was a man? A. Yes, sir.

"Q. Now, with that situation there in front of you I'll ask you what did you do when you saw this, what you thought was a man who later proved to be this boy sixteen, seventeen years old, loping, what did you do, Mr. Jones? A. Well, I hit my brake and my horn at the same time, at the same time to attract his attention.

"Q. Which way was he looking? A. He was looking away from me, down, like he was wondering if those other cars were going to come around just like he didn't know my car was there at all.

"Q. Did he ever look towards you? A. No, sir."

The testimony of the highway patrolman was that there were skid marks on the highway beginning at a point about 190 feet east of the point of impact. The patrolman further stated that the skid marks indicated the right side of defendant's car was on the north shoulder of the road at the point where it struck the deceased. Defendant's evidence supported the patrolman's conclusion. Defendant said the left front of his car struck Robert Lee when he was at the north edge of the pavement.

It is evident that the deceased had taken a number of steps toward the north and was near the center of the pavement when the defendant first discovered his presence. The jury may well have found that the defendant in the exercise of the highest degree of care could have discovered the deceased in imminent peril in time to have averted striking him. We rule that the evidence was sufficient to support a verdict for plaintiffs under the humanitarian doctrine. See Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, loc. cit. 548, 549 (15, 16), and cases there cited.

Defendant argues that the evidence failed to show that the deceased could have been discovered before the defendant saw him. Defendant, in his brief, says, "Under the state of facts how is it possible to say without indulging in speculation, what was the line of defendant's vision when the boy started to run across the highway? We know there was one moving vehicle between the boy and the defendant's automobile. How could the jury have concluded that the defendant could have seen the boy before he did?" Defendant did not testify that the Indiana car obstructed his view. He did say, as we have quoted him, "He was coming from the center of the highway across to the other side. I saw a car pull out ahead of him which distracted my attention. That's the first time I had seen the man that had got out of the car." It was in evidence that no cars were ahead or behind defendant's car on the north side of the road. There is no evidence that the Indiana car in any way obstructed defendant's view. It stopped on the side of the road and after the deceased got out, it pulled back onto the highway and went east. We are of the opinion that a jury could well find that deceased was in view of the defendant at the time he stepped off the shoulder of the roadway onto the pavement.

Instruction P–2, given by the trial court at plaintiffs' request, reads: "The

Court instructs the jury that any person operating an automobile on a public highway is required to use the highest degree of care in the operation of the same. The highest degree of care means the care which a very careful person would use under like or similar circumstances to prevent injury or death to other persons. The Court instructs you that the absence of such care constitutes negligence on the part of the person so operating his automobile."

As stated above, plaintiffs' counsel, in oral argument, conceded that this instruction should not have been given. Primary negligence was not in the case and should not have been considered as a basis for liability. The impropriety of giving such an instruction in cases submitted solely under the humanitarian doctrine was ruled in the case of Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6, loc. cit. 8(2). We need not add anything to what was said on this subject in the Reiling case.

■ Instruction P–5, of which defendant complains, authorized the jury in assessing damages to "take into consideration the mitigating and aggravating circumstances, if any, attending the negligence, if any, on the part of the Defendant * * *." Since the case must be retried, we need not consider this point at length. Plaintiffs, in their brief, have not attempted to justify the giving of this instruction. On a retrial, plaintiffs should be guided by the rule governing such cases. See Boyd v. Missouri Pacific R. Co., 236 Mo. 54, 139 S.W. 561, loc. cit. 571(9).

For the error in giving instruction P–2, the judgment is reversed and the cause remanded.

All concur.