Dorris **MONTGOMERY**, Plaintiff-Appellant,

v.

Fred **SOBEL**, Defendant-Respondent.

No. 47475.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Rehearing Denied April 11, 1960.

Lyng, MacLeod, Abels & Lyng, Russell N. MacLeod and F. Daley Abels, St. Louis, for plaintiff-appellant.

Walther & Cloyd, George W. Cloyd, St. Louis, for defendant-respondent.

VAN OSDOL, Special Commissioner.

In this action instituted by plaintiff Dorris Montgomery against defendant Fred Sobel, plaintiff sought recovery of $25,000 damages for personal injuries sustained when the 1954 Buick sedan driven by defendant collided with the 1951 Studebaker Champion driven by plaintiff at or in the intersection of Bartmer and Delaware Avenues in St. Louis County. Verdict and judgment were for defendant, and plaintiff has appealed.

Plaintiff's case was submitted to the jury on negligence of defendant under the humanitarian rule. The sole question raised by plaintiff-appellant is of error in giving defendant's verdict-directing Instruction No. 4. The factual versions of the respective parties were in conflict as to the way in which the casualty was brought about, and the evidence supporting and refuting the respective factual theories has a definitely material bearing on the propriety of giving the instruction.

Delaware Avenue is a north-south street thirty feet in width and its southern terminus forms a "T" intersection with Bartmer Avenue, an east-west street thirty-six feet wide; however, south of the intersection there is a roughly surfaced driveway extending southwardly some distance from the south side of Bartmer. The latter street is paved with concrete. The surface of the pavement, however, is somewhat deteriorated in the intersection, the cement having been eroded leaving a rough course aggregate. There is a stop sign on the west side of Delaware about fifteen feet north of the intersection. There are no traffic-control lights or signs on Bartmer at or near the intersection.

Plaintiff introduced evidence tending to show that, at approximately seven twenty on a rainy April morning, she, having driven her Studebaker southwardly on Delaware, stopped the vehicle at the stop sign north of Bartmer. There she discharged one of the several passengers who were riding with her. She then moved southwardly and stopped with her car about even with the north curb line of Bartmer. She was intending to make a "U" turn in the intersection and to go back northwardly to her place of employment. Having looked eastwardly, she then looked westwardly and saw defendant's Buick moving eastwardly at a speed of twenty to twenty-five miles an hour. Defendant's vehicle was then about five hundred feet from the intersection. Plaintiff started into a "U" turn and, having swung a little to the west, cut "to the left and followed the circle around." When she was close to and almost parallel with the south curb of Bartmer, she looked in the rear-view mirror and saw defendant's car "about 300 feet back" and moving on the south side of Bartmer. Plaintiff continued to execute "one continuous turn" at the "constant" speed of from two to three miles per hour. Throughout the continuous turn of constant speed, she kept the left-turn blinker light turned on. In making the turn, her car passed about a foot and a half north of the south curb line of Bartmer. Shortly before the collision, her attention was attracted by the sound of the application of brakes, and she looked and saw defendant's car about six feet away moving at a

speed of about twenty or twenty-five miles per hour. He was driving on the north side of Bartmer—about five feet north of the center line. At that time the front end of plaintiff's car was about four feet from the north curb line of Bartmer. And, when the collision occurred, her car was almost completely over (north of) the center line of Bartmer and defendant's vehicle was headed southeast. The right front of defendant's vehicle struck "my (left) door and the back part of my car" and knocked plaintiff's car "back over into the eastbound lane, headed east by slightly northeast." Defendant's car came to rest north of plaintiff's car, and was headed a little south of east.

Defendant introduced evidence tending to show that, moving eastwardly, at a speed of twenty to twenty-five and with the left of his vehicle about two feet south of the center line of Bartmer, he, from the distance of one hundred fifty feet, saw plaintiff's Studebaker, moving four or five miles per hour, coming out of Delaware into Bartmer. It headed south toward the south curb of Bartmer and "swung around through that small driveway there." At that time the left blinker light of plaintiff's car was on, but when the car was parallel with Bartmer, the blinker light "went off." When plaintiff's car was "a little bit" in the driveway, defendant had reduced speed to five, six or seven miles an hour, and was "perhaps ten feet to the rear" of plaintiff's car which, then headed east right at the south curb, "seemed to just barely move or momentarily stop." Defendant then "proceeded to slow up a little bit and go on by her." When defendant's car was "overlapping" the back end of plaintiff's vehicle and three or four feet north of it, "her car suddenly took a short left and lurched into my path. * * * I hit my brakes and swerved to the left. * * * Perhaps a couple of feet." Defendant was unable to further reduce the speed of the Buick before the impact. The right front side of defendant's Buick struck the left front door of plaintiff's Studebaker.

At the time of the impact, both vehicles were on the south side of Bartmer. There was sufficient space for two moving vehicles south of the center of Bartmer. At the time of the impact the front end of defendant's car was a foot or so east of the east curb line of Delaware, and plaintiff's car was angling across the two eastbound lanes of Bartmer.

In submitting plaintiff's theory of defendant's negligence under the humanitarian rule, it was hypothesized in plaintiff's verdict-directing Instruction No. 1 that plaintiff who had been moving southwardly on Delaware "did make a 'U' turn at its intersection with Bartmer" and reversed her direction so as to proceed northwardly across the intersection; that, at and prior to the time of the collision, "plaintiff's automobile was returning over and across the intersection in a generally northwardly direction * * * that while so doing the automobile with plaintiff therein came into and was in a position of imminent peril * * * and that defendant saw or by the exercise of the highest degree of care could have seen * * * plaintiff * * * in the aforesaid position of imminent peril * * * *in time thereafter* * * * to have slackened the speed of his said automobile and to have stopped the same * * * and thereby have avoided the aforesaid collision * * *." (Our italics.)

Defendant's questioned verdict-directing Instruction No. 4 was as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence Fred Sobel was operating an automobile in an easterly direction on Bartmer Avenue approaching its intersection with Delaware, and if you further find that as he was doing so, plaintiff was operating her automobile in a southerly direction on Delaware Street and drove her said automobile into the intersection of Delaware and Bartmer and was turning her automobile to her left and in an

easterly direction, and if you further find that in so doing plaintiff passed out of the path of Fred Sobel's eastbound automobile and that her automobile was then within approximately one foot of the south curb of Bartmer headed in an easterly direction and was stopped or was moving at a speed of two to three miles per hour and was not in a position of danger of being struck by Fred Sobel's automobile, and if you further find that as Fred Sobel approached the rear of plaintiff's automobile and was commencing to pass her said automobile, plaintiff drove her said automobile from a position of safety and toward and into the path of Fred Sobel's automobile, and if you further find that as plaintiff did so, Fred Sobel's automobile was then so close to plaintiff's automobile that he could not thereafter have avoided the collision mentioned in evidence by stopping his automobile or slackening the speed thereof, then you are instructed that under the law, the plaintiff is not entitled to recover and your verdict will be in favor of defendant Fred Sobel."

Plaintiff-appellant contends Instruction No. 4 was prejudicially erroneous for the reasons (A) it injected antecedent negligence of plaintiff into a humanitarian rule case, (B) it also injected the contributory negligence of plaintiff into the case, (C) if held to be a sole cause instruction, it was in error in failing to negate the submitted negligence of defendant, and (D) the hypothesis of facts did not support defendant's theory of defense, and as a result did not controvert the negligence submitted by plaintiff.

■ As a preliminary to a detailed treatment of the plaintiff's contentions and the numerous arguments in support of them, we say that, where a defendant's negligence under the humanitarian rule has been submitted, the defendant may either submit the exact converse of plaintiff's humanitarian submission, "or of any es-

sential element thereof, or he can submit facts (shown by his evidence) which would disprove one or more of the basic facts of plaintiff's humanitarian submission." Janssens v. Thompson, 360 Mo. 351, 228 S.W. 2d 743, 750; Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961; Welch v. McNeely, Mo. Sup., 269 S.W.2d 871; Largo v. Bonadonna, Mo.Sup., 269 S.W.2d 879, and other cases therein cited. And if a defendant chooses to submit facts (shown by his evidence and different from plaintiff's version) they must have the legal effect of showing that there could have been no humanitarian negligence on his part. Janssens v. Thompson, supra; Colvin v. Mills, supra. Otherwise, they could not disprove any basic fact of the humanitarian rule. If an instruction does that, and only that, there would be no question of plaintiff's antecedent or contributory negligence before the jury. Janssens v. Thompson, supra.

■ (A) and (B). It is true that an instruction which injects antecedent or contributory negligence into a humanitarian rule case is erroneous. Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, cited by plaintiff. But even a hasty look at the questioned Instruction No. 4 given in our case discloses that it is not comparable to defendant McKay's Instruction No. 3 which definitely injected contributory negligence of plaintiff (into that humanitarian rule case) in failing to yield to defendant the right of way across the intersection. And the Instruction No. 3 was so drafted as to indicate that "right of way" had something to do with the relative rights of the parties after the humanitarian rule had seized upon the fact situation. Neither is Instruction No. 4 comparable as to any contended fault to the sole cause Instruction No. 5 held to be prejudicially erroneous in Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W.2d 483, also cited by plaintiff, which instruction was prejudicial for the reasons, among others, it was so drafted that it tended to make contributory negligence of plaintiff the dominant

issue in the case, and its effect was to distract the attention of the jury from the true isue of defendant's negligence and to direct it to the false issue of plaintiff's negligence.

█ In the more particular examination of Instruction No. 4, it is of importance to note that plaintiff's Instruction No. 1 did not submit that plaintiff was in the zone of peril when she was moving southwardly or southeastwardly across Bartmer. The theory of plaintiff's submission was that she came into and was in imminent peril when she was proceeding northwardly across the intersection. We can see no prejudicial error in the hypothesis in Instruction No. 4 that plaintiff moved out of Delaware into Bartmer and turned her car to her left in an easterly direction and, in so doing, passed out of the path of defendant's eastbound vehicle. In view of plaintiff's theory of when she came into and was in imminent peril, the hypothesis of these facts of plaintiff's southward or southeastward movement in Instruction No. 4 did not erroneously limit the zone of peril as did the erroneous Instruction 3 in the Catanzaro case; but by such hypothesis we think the Instruction No. 4 eliminated the possibility that the triers of fact might consider that plaintiff was in imminent peril in her southbound or southeasterly progress across Bartmer, even though, as stated, plaintiff's instruction (No. 1) had submitted that she came into and was in imminent peril only in her northbound progress across the intersection. Surely the jury could not reasonably consider that Instruction No. 4 was submitting negligence of plaintiff in hypothesizing that she "passed out of the path" of defendant's eastbound vehicle. And the hypothesis that, when she was moving slowly or had stopped close to the south side of Bartmer, plaintiff "was not in a position of danger" may or may not convey an inference that, theretofore, she had been in danger in moving southwardly and southeastwardly through the intersection; but such hypothesis at least put plaintiff in a position of safety on the south side of Bartmer.

Plaintiff has said in her brief that one can only feel, when reading the instruction, that (unwittingly or otherwise) the jury's attention was called to the fact "that plaintiff was making a 'U' turn (and admittedly she was), but which to many people in itself connotes negligent driving and therefore should not have been referred to in the instruction." But it will be noticed by referring to our partial outline of plaintiff's Instruction No. 1, supra, that plaintiff had hypothesized that she "did make a 'U' turn" at the intersection. It is surmised that these preliminary hypotheses of facts in the instructions of both of the parties were but submissions of the approach of the vehicles of the respective parties to the scene of the casualty. They were not designed and intended to submit negligence in the antecedent conduct of either party, and we doubt that any ordinarily intelligent juror would consider these facts so hypothesized as submitting factual bases for negligence.

In connection with plaintiff's contention "(D)" we again note that it was the theory of plaintiff's submission that she came into and was in imminent peril in her northbound movement, and defendant's instruction submitted that plaintiff was "not in a position of danger" when she (according to defendant's evidence) had stopped momentarily or was moving slowly on the south side of Bartmer.

█ In supporting her contention "(D)", plaintiff argues that Instruction No. 4 failed to submit that defendant was moving closely to plaintiff's left or that the collision occurred suddenly after plaintiff had started to move northwardly, or that defendant was not moving along the north side of Bartmer just before the collision as plaintiff had testified he was, or that the collision did not occur on the north side of Bartmer as plaintiff had testified it did. And plaintiff says the elements of discovered and discoverable peril essentially were

a part of the instruction and the instruction was erroneous in failing to "controvert them." Says plaintiff, "This would be particularly true here where Instruction No. 4 sets out plaintiff's speed as being 2–3 MPH and defendant's own evidence shows he was going 20–25 MPH when he saw plaintiff the first time. This would mean that plaintiff could have traveled as much as 32 feet (her evidence) before the impact occurred and thus the defendant would have gone approximately seven to twelve times as far as plaintiff in the same time, which would have put him 140–240 feet back when plaintiff left the south curb and started northwardly." In making these arguments plaintiff has overlooked the submission that plaintiff's car *"was within approximately one foot of the south curb of Bartmer* and was stopped or moving at a speed of two to three miles per hour and was not in a position of danger * * * and * * * *that as Fred Sobel's automobile approached the rear of plaintiff's automobile, and was commencing to pass her said automobile, plaintiff drove her said automobile from a position of safety and toward and into the path of Fred Sobel's automobile."* It is true the instruction did not submit that plaintiff moved "suddenly" or immediately into the path of defendant's vehicle; but, nevertheless, the hypothesis we have quoted and italicized so submitted the close proximity of positions of the vehicles to each other and of plaintiff's vehicle to the south curb of Bartmer (when, as hypothesized, she drove her automobile from a position of safety and toward and into the path of defendant's car), all in accordance with defendant's factual theory and admittedly supported by his evidence, that the instruction leaves no room for any reasonable supposition that a jury might conclude that they should find for defendant and yet embrace plaintiff's factual theory of the positions and movements of the respective vehicles on and along the north side of Bartmer in their immediate approach to the point of collision.

Instruction No. 4 did not hypothesize "that at the time plaintiff's automobile entered *into a position of peril"* defendant could not have prevented the collision, as did the converse Instruction No. 3 in Welch v. McNeely, supra. But Instruction No. 4 submitted "that as plaintiff did so," that is, as "plaintiff drove her said automobile from a position of safety and toward and into the path" of defendant's automobile, it was then so close to plaintiff's automobile that he could not thereafter have avoided the collision. This submission, as we see it, at least encompassed the entire zone of peril as plaintiff had submitted, that is, as "plaintiff's automobile was returning over and across the intersection in a generally northwardly direction." As to the contention that the instruction (No. 4) was erroneous in failing to require that defendant in "the exercise of the highest degree of care" could not thereafter have avoided the collision, the contention is answered in the language of this court in Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919, 920—"Logically considered this instruction is more favorable to plaintiff than it would have been if the requirement as to stopping or checking speed had been limited by inserting the words plaintiff says should have been inserted. This is true because the instruction as written only authorizes a verdict for defendant if it was impossible, upon any hypothesis, for the bus driver to have stopped or checked speed." The same language answers the contention of error in omitting any requirement of discovered or discoverable peril. Welch v. McNeely, supra; Rosenfeld v. Peters, Mo.Sup., 327 S.W.2d 264. See also Fisher v. Williams, Mo.Sup., 327 S.W.2d 256.

▌ An additional phase of the contention of error "(B)" in injecting contributory negligence is now to be noticed in connection with our examination of contention "(C)".

We again note the submission in the instruction (No. 4) that plaintiff drove her automobile *"from a position of safety and toward and into the path"* of defendant's automobile. This or like language, says plaintiff, is commonly seen in sole cause instructions and indicates the hypothesis of negligence as the sole cause. See the sole cause instructions in Janssens v. Thompson, supra; Steffen v. Ritter, Mo.Sup., 214 S.W.2d 28; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562. See also the sole cause instruction given in a primary negligence case—Rembusch v. Prebe, 358 Mo. 409, 215 S.W.2d 433. Therefore, plaintiff argues, if Instruction No. 4 is a sole cause instruction, it is erroneous in failing to require a finding that defendant was not guilty of negligence as submitted in Instruction No. 1. The trouble with this argument is that the instruction does not even purport to submit plaintiff's movement from a position of safety and toward and into the path of defendant's vehicle as negligence or as sole cause negligence. And plaintiff in her brief admits that she has "been unable to find any case where the specific question has been decided of whether the phrase, 'drove from a position of safety into the path of, etc.,' in itself sets out plaintiff's negligence." The instruction, although not a true converse instruction (see Schaefer v. Accardi, Mo.Sup., 315 S.W.2d 230), was no doubt designed to submit facts supported by defendant's evidence which were factually the converse of and refuted and destroyed one of the basic facts of the humanitarian negligence submitted in plaintiff's instruction. Viewed in this light, the quoted and italicized language, supra, was not the hypothesis of negligence of plaintiff as such, but the hypothesis of factual bases (admittedly supported by defendant's evidence) for and prefatory to the further hypothesis of fact that defendant's automobile "was then so close to plaintiff's automobile that he could not thereafter have avoided the aforesaid collision." Now, if the jury believed that when plaintiff left a position of safety on the south side of Bartmer and moved northwardly toward and into the path of defendant's car or, as otherwise stated in accordance with plaintiff's hypothesis, when she, in moving "in a generally northwardly direction," came into and was in a position of imminent peril, defendant's vehicle was then so close to plaintiff's vehicle that defendant could not thereafter avoid a collision, the jury could not but find for defendant because these facts supported the converse of, refuted, controverted, disproved and destroyed the basic humanitarian rule fact that plaintiff had submitted, that is, that defendant had "time thereafter * * * to avoid the aforesaid collision." See now constitutive fact, essential element, or basic fact (3), Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, and again Welch v. McNeely, supra; Largo v. Bonadonna, supra. And see also Silver v. Westlake, Mo. Sup., 248 S.W.2d 628, and Rembusch v. Prebe, supra, the latter a primary negligence case but which in principle, we believe, supports our decision here.

Having thus examined the contentions made by plaintiff-appellant and the arguments in support of them and with a regard for the factual versions of the respective parties and the manner of their submission to the jury, we are of the opinion the instruction (No. 4) was not prejudicially erroneous; and that the judgment for defendant should be affirmed, and it is so ordered.

PER CURIAM.

The foregoing opinion by VAN OSDOL, Special Commissioner, is adopted as the opinion of the court.

All concur.