Zelma THAYER and Elza Thayer, Plaintiffs-Appellants,

v.

Ralph C. SOMMER, Defendant-Respondent.

No. 48961.

Supreme Court of Missouri,

Division No. 1.

April 9, 1962.

Thomas R. Dowd, St. Louis, for appellants.

Dearing, Richeson & Weier, by H. L. C. Weier, Hillsboro, for respondent.

DALTON, Presiding Judge.

Action for $15,000 damages for personal injuries alleged to have been sustained by plaintiff Zelma Thayer when the automobile, which she was operating, stalled in the northbound lane of U. S. Highway No. 61, as she was crossing to enter the southbound

lane, and it was struck by defendant's north-bound automobile. Zelma's husband Elza, who owned the car, joined in the action, in a second count, seeking to recover $3,000 for damage to his automobile, medical expenses incurred by reason of his wife's injuries and for loss of consortium.

The cause was submitted under the humanitarian doctrine on defendant's negligent failure to slacken speed, stop or swerve and thereby avoid striking the stalled automobile after imminent peril arose. Verdict and judgment were for defendant. Plaintiffs have appealed and here complain of the giving of the defendant's Instructions No. 2 and 4 and the exclusion of certain evidence.

Plaintiffs' evidence tended to show that the collision in question occurred in front of the Florian Zoellner residence, near where Zoellner's driveway enters the east side of U. S. Highway 61 in Perry County, Missouri. The driveway enters about 1500 feet north of what is referred to as Sunset Inn, north of Perryville, Missouri. The highway is straight and level and paved with concrete twenty feet in width, with the shoulders eight to ten feet in width on either side. There is no obstruction to view for one-half mile to the north or for some 2400 feet to the south, to the top of a hill beyond Sunset Inn. About 450 to 500 feet south of the place of collision there is a slight rise with a dip beyond so that only the upper portion of an approaching automobile beyond the rise would be in full view.

Plaintiffs resided in Jennings, Missouri, and on July 29, 1955, plaintiff Zelma, accompanied by her first cousin, Mrs. Brinkmeier, was proceeding from Jennings to Perryville to see Zelma's mother, who was hospitalized there. Before they reached Perryville they stopped at the mentioned Zoellner home on the east side of Highway 61 for a brief conference with Mr. Zoellner before proceeding further. It was then 8:30 to 8:45 p. m. (C.S.T.). The weather was clear, the pavement dry and there was no fog or other impediment to visibility.

When plaintiff left Zoellner's it was dusk or dark. Plaintiff had turned on the headlights of her car at Ste. Genevieve, before reaching the Zoellner home. The automobile she was driving was a 1948 manual-shift Chevrolet. As she left the Zoellner drive and reached the highway pavement, she stopped the car and looked both ways, but saw no automobile lights in either direction. She then shifted to low and entered on the pavement. She was in the act of turning south and across to the west side of the highway when her motor "died" and the car stopped. At that time the right front wheel was across the center line of the highway and the left rear portion of the automobile was still on the east shoulder. The car stood at a 45-degree angle, apparently facing southwest. It fully occupied the northbound traffic lane; however, there was nothing in front of it and nothing behind and no southbound traffic was approaching.

Zelma testified: "After I had pulled out there and my car died I saw these headlights from the south." They were on the other side of Sunset Inn. "I tried to start my motor and it wouldn't start and I kept watching the car, the lights, and I was out there in the highway trying to start the car and this car kept coming my way." She tried to start it a second time and saw that the approaching car was getting closer, so she started to blow the horn. She was never able to get the car started although she made two or three efforts, with some interval or moments of time between each effort. To attract attention, she had started blowing the horn when the approaching automobile was "down by that white gate, which I imagine is about 500 feet or a little closer to the Zoellner driveway. * * * I was sitting there and trying to start the car and all the time watching these lights and they were getting closer each time I looked and I was helpless. I couldn't get the car started." Even then no cars were approaching from the north. The horn continued to blow from the time the approaching car reached the rise in the highway until

the collision occurred and the headlights of the car remained on. Plaintiff Zelma was sure that her car was stalled on the highway for more than a minute, a minute or two, and the mentioned rise had not obstructed her view of the headlights of the approaching car.

Mrs. Brinkmeier heard the squealing of the brakes of the approaching car when it was some 75 feet away and it skidded down directly into the automobile in which the ladies were seated. The collision swung the front of the plaintiffs' car around at a 45-degree angle, so that it faced northwest, with its headlights still burning after the collision. Defendant's automobile stopped in its own traffic lane against the stalled automobile.

Mrs. Brinkmeier thought defendant's car approached at 55 to 60 miles per hour, and so fast that defendant couldn't stop. The front portion of the defendant's car struck into the left front fender and door of the stalled automobile.

Patrolman John H. Little arrived about twenty minutes after the collision and observed 69 feet of skid marks on the pavement, extending that distance south from the damaged vehicles. These skid marks were parallel to the east side of the pavement and the nearest skid mark was about three and a half feet from the east edge of the pavement. The skid marks did not swerve either way, but extended in a straight line. He asked plaintiff Zelma what happened and her answer was: "All I can say is I pulled out there and I was making a left to go to Perryville. I'm not going to say how fast he was going, but he was going a pretty good clip. I blowed my horn when I saw him coming but he didn't stop." She further indicated that she was not hurt in the collision. He asked defendant Sommer what had happened and he answered: "I was just riding along and all of a sudden Babs said 'look out' and that's the first time that I saw them. I couldn't go either way and that's just about it. They just pulled out in front of me and I couldn't

stop." ("Babs" was Barbara Hereforth, now Mrs. Walter.)

On cross-examination plaintiff Zelma said she remembered making a statement that, "All I can say is I pulled out there and I was making a left to go to Perryville * * *." She didn't tell the patrolman that her "motor had died," because her brother-in-law had said to her: "Don't say your car was stalled, not on the highway," and she thought he was trying to help her and she felt he knew more about the law than she did. She further admitted having made and signed a written statement, as follows: "I drove to the highway and stopped. I was in low gear when I started up. I saw Ralph Sommers to my left but I thought sure I had plenty of time and I went on out onto the highway." She also said: "I didn't put in that (statement) my motor was stalled." She didn't read the statement before signing it, although above her signature the document read: "I have read the above and find it true to the best of my knowledge and belief." The written document contained a further statement: "When I saw he was coming faster than I expected I moved my arm." She further admitted that she had said, in answer to a question as to how long she sat on the highway with her engine "dead" before the collision occurred, "Well, I guess a couple of seconds." She then testified that she was wrong when she made that answer because she "meant a couple of minutes. A minute or so." In view of the issues presented on appeal we omit the testimony concerning the extent of plaintiff's injuries.

Plaintiff Elza testified that he owned the Chevrolet in question which he had given his wife permission to drive. He said the car had a value of $450 before the collision and its value after the collision was $65. We need not review his further testimony. The wreck occurred on July 29, 1955. The wife's suit was instituted on June 28, 1960, and her husband joined in her suit, as an additional plaintiff on October 13, 1960, when (in count two) he sought recovery for damage to the car and other damages, as

mentioned. Defendant, by answer, pleaded as a defense to count two of the amended petition the statute of limitation, to wit: Sections 516.100 and 516.120 RSMo 1959, V.A.M.S., and, as respondent here, insists that plaintiff Elza made no case for the jury.

Defendant's evidence tended to show that, on the date in question, he was unmarried and was driving north on U. S. Highway 61 from Perryville, with one Barbara Hereforth, to attend a drive-in theater located north of the Zoellner farm; that he was driving at 40 to 45 miles per hour; that he saw two headlights coming toward him from the north; that he could not say whether there was one or two lights but that he did see headlights ahead; that he was driving in his right-hand, northbound lane when he first saw the Thayer car ahead across his traffic lane; that he could not then judge its distance from him; that he immediately applied his brakes and slowed his car, but, nevertheless, collided with the side of the Thayer automobile. He further testified that his automobile was in good working order, as far as he knew, with good brakes, tires and headlights; that there was no obstruction to vision through his windshield; that he had only seen lights, apparently approaching, before seeing the Thayer car; that he didn't know how long it had been in his traffic lane; that the headlights of the car prevented him from pulling or swerving to the shoulder; that there were shoulders on the highway, but he didn't know how wide; that the front end of his car was smashed; and that "he was just riding along and all of a sudden Babs said, 'look out' and that's the first time I saw them." He saw the car at the time she said "look out."

Barbara, now Mrs. Walters, testified that: "Defendant wasn't going too fast. It was around, oh, 45 to 50, somewhere around there. * * * I know when I seen it I hollered, I said, 'look out, Ralph, there's a car.' And he heard—he seen it at the same time." She couldn't give the distance away but defendant slammed on his brakes. She didn't hear the brakes since she was more interested in the car ahead. Her head hit the windshield and her left eye was cut and her hand and knees damaged. When she first saw the Thayer car "it looked like it was stalled across the highway." She didn't think there were any headlights on the car, although she admitted having said: "I do not know whether the lights on the other car were on or off. I did not see any lights before we hit." The car was straight out from the Zoellner driveway "the way it looked to me."

■ Respondent contends that, insofar as appellant Elza Thayer is concerned, the errors, if any, in the trial are immaterial because the cause of action pleaded by Elza was barred by limitations and Elza made no case for the jury. O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248, 249(1, 2). The contention must be sustained. Sections 516.-100 and 516.120 RSMo 1959, V.A.M.S., Scanlon v. Kansas City, 325 Mo. 125, 28 S. W.2d 84; Coleman v. Ziegler, Mo.Sup., 248 S.W.2d 610, 615(6, 7).

■■ Before setting out the questioned instructions perhaps we should say that, while the plaintiffs submitted their cause solely under the humanitarian doctrine apparently to avoid the defense of contributory negligence, the plaintiffs by Instruction No. 5 caused the jury to be instructed with reference to defendant's duty in a *primary negligence case*, as follows: "The Court instructs the jury that under the law of this State it is the duty of the driver of every automobile upon the public streets and thoroughfares of this State to exercise the highest degree of care * * *." Of course this instruction was erroneous in a humanitarian negligence case, since no such duty existed prior to the time the defendant saw or by the highest degree of care could have seen the stalled automobile in a perilous position on the highway. Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6, 8(1–2); Downing v. Dixon, Mo.Sup., 313 S.W.2d 644, 648(1); Barnes v. Jones, Mo.Sup., 306 S. W.2d 512, 515(2); Cunningham v. Thompson, Mo.Sup., 277 S.W.2d 602, 610(13–18);

Anderson v. Prugh, 364 Mo. 557, 264 S.W. 2d 358, 364(7–9).

The questioned instructions, which appellants first say are unsupported by evidence, are as follows:

## INSTRUCTION NO. 2.

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence, the automobile driven by Zelma Thayer came into a position of imminent peril, if you so find, and if you further find that at that time the automobile driven by Ralph C. Sommer was so close to the Thayer automobile that Sommer was not able to avoid colliding with the Thayer automobile with the means and appliances at hand and with reasonable safety to himself and his automobile, then you are instructed that you must return your verdict in this case in favor of defendant Sommer and against the plaintiff, Zelma Thayer."

## INSTRUCTION NO. 4.

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned therein, at a point on Highway 61, approximately 2.3 miles north of the junction of Highway 61 and 51 the plaintiff Zelma Thayer drove an automobile from a private driveway on the east side of Highway 61 onto the traveled portion of said highway at a time *when the automobile operated by defendant Ralph C. Sommer was so close that it constituted an immediate hazard, and if you further find that in driving the automobile onto Highway 61 from said private driveway at said time constituted a failure to exercise the highest degree of care in the operation of said automobile on the part of the plaintiff Zelma Thayer, then Zelma Thayer was negligent, and if you further find that such negligence, if any, on her part, was the sole cause of the collision in question,* and that it was not due to the negligence of defendant Ralph C. Sommer as set out in other instructions given you herein, then your ver-

dict shall be in favor of the defendant Ralph C. Sommer." (Italics ours.)

Appellants first insist that there was no substantial evidence "to support a finding by the jury that defendant's automobile was so close to plaintiff's car when said car *came into* a position of imminent peril that that defendant was not able to avoid colliding (Instruction No. 2), or that the plaintiff's car *entered* the traveled portion of the highway when defendant's automobile was so close that it constituted an immediate hazard (Instruction No. 4)." Appellants further say that defendant offered no evidence "as to exactly when plaintiff's car did enter the highway, or of the distance or time separating the two vehicles at that time."

■ Apparently, it is appellants' theory that it was necessary for defendant's evidence to present "a specific new factual situation" in order to be entitled to submit a converse instruction; however, defendant was entitled to submit an instruction based upon a view of plaintiffs' evidence favorable to defendant if not in conflict with defendant's own testimony or his own theory of the case.

■ In determining whether a defendant's instruction is supported by substantial evidence, the court must consider the evidence in a light most favorable to defendant and disregard all unfavorable evidence. Rothe v. Hull, 352 Mo. 926, 180 S. W.2d 7, 8(1–3); Bunch v. Mueller, 365 Mo. 494, 284 S.W.2d 440, 445; Dawley v. Hoy, Mo.Sup., 341 S.W.2d 111, 116(5).

■■ On the issue now presented we do not consider the correctness of the instructions, but only the sufficiency of the evidence to support any affirmative finding submitted. The jury was the sole judge of the credibility of the witnesses and the weight and value of their testimony and could believe or disbelieve any portion of such testimony. Considered favorable to defendant, the jury could believe and find from plaintiffs' own evidence that on the oc-

casion in question plaintiff Zelma pulled out on the highway and was making a left turn to go to Perryville; that she thought she had plenty of time to cross in front of defendant's approaching car, but was mistaken; that the automobile was approaching faster than she expected; that perhaps her car did not stall on the pavement, since she didn't mention any such fact to the patrolman; or that if her car did stall on the highway it was stopped only two seconds before the collision; and that when plaintiffs' automobile was first observed, or observable in imminent peril in defendant's traffic lane, defendant applied the brakes and tried to stop but was unable to do so. Plaintiffs also offered defendant's own statement to the patrolman that "they just pulled out in front of me and I couldn't stop."

In this connection it will be noted that plaintiffs offered no evidence tending to show when plaintiffs' automobile should have been observable to an approaching motorist, or that, after the Thayer car was first observable as being in imminent peril in the northbound traffic lane, any slackening of speed alone by defendant would have avoided the collision, nor was there substantial evidence that defendant's automobile could have been swerved or stopped with reasonable safety after plaintiffs' car was first visible and observable by the highest degree of care in a stalled position, if any, in the northbound lane by an approaching motorist, nor that plaintiff Zelma's imminent peril could have been or should have been apparent to one in defendant's position in the exercise of the highest degree of care any earlier than it was seen by defendant. When considered favorably to defendant, there was no inadequacy of evidence to support the giving of the mentioned instructions.

■ Appellants make no specific objection to Instruction 2, which apparently follows the form of Instruction 4 in Rosenfeld v. Peters, Mo.Sup., 327 S.W.2d 264, 267, 268(3), where certain defects in the instruc-

tion were held to be favorable to plaintiff-appellant. Appellants do say that Instructions 2 and 4 submit the same theory and appellants then insist that there was no need for two instructions; that two instructions on the same issue were prejudicial to plaintiffs and gave defendant an unfair advantage. It is well settled that mere repetition in instructions is ordinarily within the discretion of the trial court and, except in unusual cases or where so considered by the trial court, such repetitions do not constitute prejudicial error. Wells v. City of Jefferson, 345 Mo. 239, 132 S.W.2d 1006, 1009; Reidinger v. Adams, Mo.Sup., 266 S.W.2d 610, 613(4); Greenwood v. Wiseman, Mo.Sup., 305 S.W.2d 474, 477(2). We need not rule the particular matter in this case since, as later appears, we find Instruction 4 to be prejudicially erroneous.

With reference to Instruction 4, set out supra, appellants insist that it purports to be a sole cause instruction but fails to hypothesize facts to exclude the negligence of defendant as a positive concurring cause of the collision; that it both directly and by reasonable inference (by the italicized portion) injects an issue of contributory negligence for the consideration of the jury; and that the instruction would lead a jury to believe that such negligence would bar recovery by plaintiffs.

Respondent insists that the phrasing of Instruction 4 has the sense and meaning of imminence so as to exclude humanitarian negligence; that other provisions of the instruction require the acts of Zelma to be the "sole cause" of the collision and require a finding that it was "not due" to the negligence of defendant Sommer. Respondent says that it restricted the jury to the converse of a humanitarian situation, as hypothesized in plaintiffs' Instruction 1, and therefore it could not have misled or confused the jury. Respondent further insists that the words "so close that it constituted an immediate hazard" hypothesized a factual situation similar to that shown by the words "closely" and "suddenly" as used in approved converse instructions, citing Jans-

sens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 747. Respondent also cites Rosenfeld v. Peters, supra, 327 S.W.2d 264, 267; Montgomery v. Sobel, Mo.Sup., 334 S.W.2d 112, 114 and Siegel v. Peters, Mo.Sup., 347 S.W.2d 881, 882.

In the Rosenfeld case this court, in holding a particular instruction erroneous, said: "If defendant had left out the clauses concerning right of way * * * and had drawn this instruction to submit that as defendant approached close to the crossover, Siegel suddenly drove his car from a stopped position on the crossover onto the highway closely in front of defendant's car; and then required a finding that this was negligence of Siegel which was the sole cause of the collision and that defendant was not guilty of any negligence submitted in any other instructions, it would have been a good sole cause instruction." However, in that case Siegel was not *the plaintiff*, nor was he a party to the action. He was the operator of the automobile in which plaintiff was riding. Siegel was, therefore, a third party and the court subsequently said: "In the Happy case [Happy v. Blanton, Mo.], 303 S.W.2d 633, 637, we held the sole cause instruction therein failed to hypothesize fact showing a sole cause situation saying: '[A]n instruction submitting the issue of nonliability on the part of a defendant because the negligence of *a third party* was the sole proximate cause of plaintiff's injuries must do more than direct a verdict for that defendant only upon a finding that *the third party* was in some manner negligent.' " (327 S.W.2d 264, 267.) (Italics ours.)

■ The above statement in the Rosenfeld case now relied upon by respondent does not apply to a plaintiff in a humanitarian negligence case, because plaintiff's negligence, antecedent or contributory, constitutes no defense. Any acts of plaintiffs submitted to show a sole cause situation should not be characterized as *negligent* acts, nor should a submission be made to a jury whereby the said acts may be found to be *negligent* acts. To do so is likely to mislead the jury into believing or allowing contributory negligence as a defense. In such case, the issue is not whether plaintiff's acts are negligent acts or whether they constitute negligence, but whether, if found, as submitted, they constitute the sole cause of the collision in which defendant's negligence was not a concurring cause.

The case of Montgomery v. Sobel, supra, 334 S.W.2d 112, 114, does not support respondent's position because in that case, where a defendant's verdict-directing instruction (No. 4) was approved in a humanitarian case, the instruction submitted specific acts and conduct of plaintiff as a defense and a finding, thereafter, that defendant could not have avoided the collision. The instruction did not characterize plaintiff's said acts as having been negligently done, nor did it submit a finding that the performance of the acts constituted negligence on plaintiff's part. The instruction did not interpose antecedent or contributory negligence of plaintiff as a defense. Nor does Siegel v. Peters, supra, 347 S.W.2d 881, 882 support respondent's position. The instruction there considered is not subject to the defects of Instruction No. 4 and it falls within the rule applied in the Montgomery v. Sobel case.

■ We find the italicized portion of Instruction No. 4 clearly erroneous. The fact that "the plaintiff Zelma Thayer drove an automobile from a private driveway on the east side of Highway 61 onto the traveled portion of said highway at a time when the automobile operated by defendant Ralph C. Sommer was so close that it constituted an immediate hazard," constituted no defense in this humanitarian case, since a finding of the submitted facts only tended to show that a position of immediate peril came into existence, imposing a duty upon the defendant to act. The issue for decision necessarily was whether or not defendant performed that humanitarian duty as submitted by plaintiffs' Instruction No. 1. The instruction required no finding that the

automobile's entrance upon the highway was so suddenly and closely in front of defendant's automobile that said automobile could not, in the exercise of the highest degree of care, be slackened, stopped or swerved to avoid the collision. Instead, the instruction proceeds to submit plaintiff Zelma's contributory negligence, as if it were a defense to plaintiffs' right of recovery, and not only characterizes the submitted acts of plaintiff Zelma as negligent, but further submits a finding by the jury that the submitted acts of plaintiff Zelma constituted negligent conduct.

It is apparent that the instruction does not hypothesize a finding of facts which would exclude defendant's negligence as a possible concurring cause of the collision. Nor does it present a complete state of facts and circumstances which would exonerate defendant of negligence and demonstrate that plaintiff Zelma alone was at fault and the responsible cause of the collision. The form of the instruction tended to divert attention from the humanitarian issue as to whether defendant should have seen plaintiff Zelma in a position of imminent peril in time to have avoided the collision by slackening speed, stopping or swerving, and it could be understood as authorizing the jury to find her antecedent negligence a bar to plaintiffs' recovery. Johnson v. Cox, Mo.Sup., 262 S.W.2d 13, 15; Carney v. Stuart, Mo.Sup., 331 S.W.2d 558, 562(4–6); Hickerson v. Portner, Mo.Sup., 325 S.W.2d 783, 787(4).

Further, the instruction was so drafted that it tended to make the contributory negligence of plaintiff Zelma the dominant issue in the case and its effect was to distract the attention of the jury from the true issue of defendant's negligence and to direct it to the false issue of plaintiff Zelma's contributory negligence. Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W.2d 483, 487; Klecka v. Gropp, Mo. Sup., 278 S.W.2d 790, 795; Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 570(3); Hangge v. Umbright, Mo.Sup., 119 S.W.2d 382, 384(5, 6).

Appellants further contend that the court erred in excluding "the testimony of Florian Zoellner that on the night of the collision, immediately subsequent thereto, Zoellner had personally advised appellant-driver, Zelma Thayer, not to tell anyone that her car had been stalled on the highway for a minute or two prior to the collision." It is contended that this testimony was admissible and bore directly on the plaintiff-driver's action and state of mind in not voluntarily informing the State Highway Trooper that her automobile had been so stalled, even though the question was not specifically asked of her.

The mentioned issue is not before this court because the transcript wholly fails to show what testimony, if any, the witness would have given had he been permitted to answer the questions asked, nor does the assignment of error give the page in the record where the excluded evidence appears. Peters v. Dodd, Mo.Sup., 328 S.W. 2d 603, 609(6); Supreme Court Rule 83.05, V.A.M.R. This for the reason that plaintiffs made no offer to show what the witness would have testified to. An examination of the record merely shows that, on objection, the witness was not permitted to tell what private discussion he had with Zelma at the scene of the collision. An objection to the exclusion of testimony cannot be considered on appeal in the absence of a showing of what the testimony would have been and that it was relevant and material. Kraxberger v. Roiter, 91 Mo. 404, 3 S.W. 872; Bringhurst v. Bringhurst, Mo.App., 222 S.W. 874, 876. The mere refusal to allow a witness to testify is not reversible error in the absence of a showing of what the answer would have been. Lake Superior Loader Co. v. Huttig Lead & Zinc Co., 305 Mo. 130, 264 S.W. 396, 400(6). It is also the rule that reversible error cannot be predicated on the exclusion of a proper question where there is no offer of proof that the answer would have been in favor of the complaining party. Powell v. Union Pac. R. Co., 255 Mo. 420, 164 S.W. 628, 635(4).

While appellants argue as if they offered to show certain testimony by witness Zoellner, they finally concede in argument that they had expected to prove by Zoellner's testimony what "was finally brought into the record on cross-examination of the plaintiff-driver herself," to wit: that Zoellner advised her not to tell anyone her car had stalled on the highway. The record does not show that Zoellner would have so testified, as plaintiffs made no offer of proof. The issue is therefore not before us.

For the reasons hereinbefore stated, the judgment is affirmed as to appellant Elza Thayer and reversed as to Zelma Thayer, and the cause remanded.

All concur.