Arvell KEITHLEY, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 31533.

St. Louis Court of Appeals.

Missouri.

May 19, 1964.

Vernon Riehl, St. Louis, for defendant-appellant.

Byron A. Roche, Morris B. Kessler, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This suit for personal injuries and property damages arose out of a collision between plaintiff's automobile and defendant's motorbus. The case was tried to a jury, resulting in a verdict and judgment for plaintiff for $2500, from which the defendant appealed.

■ Defendant has raised but two points in its brief. The first is that "The court erred in overruling defendant's motion for a directed verdict at the close of the plaintiff's case, and, again, at the close of all the evidence * * *" for the reason that plaintiff failed to make a submissible case. Of course, whatever error, if any, may have been committed in denying defendant's motion at the close of plaintiff's evidence is not before us for review. For by introducing evidence after its motion for a directed verdict at the close of plaintiff's evidence was overruled, defendant waived its motion. Appelhans v. Goldman, Mo., 349 S.W.2d 204.

■ Plaintiff pleaded primary as well as humanitarian negligence, but by his Instruction No. 1 ultimately submitted his case to the jury on the humanitarian failure of the defendant to stop, or swerve, or slacken the speed of its motorbus, or sound a warning of its approach. Hence, our review is limited to the issue of whether at the close of the case there was sufficient evidence to justify a submission on any one of the assignments of negligence subsequently submitted. As was said in Nelson v. Wabash Railroad Co., Mo., 300 S.W.2d 407, 409: "* * * This is true because if plaintiff made a case under any theory submitted, then defendant's motion for a directed verdict and its motion after verdict for judgment were both properly denied.

DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Holmes v. McNeil, 356 Mo. 763, 203 S.W.2d 665; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91. * * *" It is hardly necessary to add that in determining whether plaintiff made a submissible case on one or more of its assignments of humanitarian negligence plaintiff is entitled to the benefit of all the favorable probative evidence in the case and all of the favorable inferences to be drawn therefrom, and defendant's evidence is to be disregarded unless it aids plaintiff's case; but plaintiff may not have the benefit of defendant's evidence which is contrary to his own testimony nor contrary to plaintiff's fundamental theory of recovery. Appelhans v. Goldman, supra; Price v. Nicholson, Mo., 340 S.W.2d 1.

The collision between the two vehicles occurred on February 24, 1961, about 5:00 P.M., at Market Street and Cardinal Avenue, in the City of St. Louis. Market runs east and west, and Cardinal north only from Market, forming a "T" type intersection. Market Street has three eastbound and three westbound lanes, each about 12 feet wide. The weather was clear, the streets dry, and the visibility very good—a bright dusk. According to plaintiff and his witnesses, Mr. and Mrs. Holman, plaintiff proceeded eastwardly on Market in his 1954 Buick, intending to turn left and go north on Cardinal. Because of the heavy flow of westbound traffic plaintiff was forced to come to a complete stop before making his turn. His automobile was in the inner eastbound lane, next to the center line, and about even with the west curb of Cardinal, in which position he waited (for an estimated one to two minutes) for westbound traffic to clear. His left turn indicator was on, and was operating. Plaintiff testified that a westbound car came to a stop in the inner westbound lane, facing plaintiff, and its driver motioned for plaintiff to turn left in front of him. As the westbound traffic had passed, plaintiff made his turn, and when in about the center of the middle westbound lane, headed north, he heard

Holman shout a warning. Plaintiff glanced to his right and for the first time saw defendant's motorbus, in the westbound curb lane of Market Street. He accelerated his car in an effort to clear the path of the bus, and about two-thirds of his automobile was north of the north curb line of Market Street when the impact occurred, knocking the car against a southbound taxicab which was stopped on the west side of Cardinal. The front of the motorbus hit the right rear of plaintiff's car, from the right rear fender to the back. Plaintiff was unable to estimate the distance between his automobile and the motorbus when he saw the defendant's vehicle, the time which intervened until the collison occurred, or the speed of his own car. He estimated that the bus was going 25 or 30 miles an hour when he saw it. Since no point is raised concerning the injuries plaintiff received or the damages to his automobile it is unnecessary to relate plaintiff's evidence on those features of the case.

Holman, who was riding in the front seat beside plaintiff, testified that he saw the westbound bus in the curb lane "* * about half a block away" at the time plaintiff began to make his left turn. He estimated that the block was about 500 feet long, which would make the intervening distance about 250 feet. Holman stated that starting from its stopped position plaintiff's car had reached a speed of between 5 and 7 miles an hour by the time it was in the middle westbound lane; that as the front end reached the curb lane he shouted a warning; and that plaintiff thereafter increased the speed of the car so that it was traveling approximately 18 or 19 miles an hour when the front end was even with the north curb of Market. Holman and his wife, Aileen, who was riding in the rear seat, both testified that the bus was not swerved or its speed decreased prior to the impact, and that its horn was not sounded or any other warning given. Alvertis Thomas, the operator of defendant's motorbus, said that his vehicle was traveling westwardly in the curb lane, at a speed

of 25 to 30 miles an hour, when plaintiff started to turn left. Defendant's witness, Altepeter, a passenger on the motorbus, testified that "* * * some several seconds, maybe five seconds * * *" elapsed between the time he saw plaintiff start his left turn and the time when the bus operator applied his brakes. Defendant's witness Kane, another passenger, stated that the operator did not apply the brakes until the bus was "* * * a couple or three feet at the most" from plaintiff's vehicle. Defendant's witness Cooley, a third passenger, said that there was no other traffic on the north side of Market Street.

█ What we are here concerned with is what is sometimes designated as an "almost escaping" case. No lengthy or involved mathematical calculation is necessary to reach the conclusion that an earlier application of the brakes with a corresponding decrease in the speed of the bus, or a slight swerving of the vehicle a few feet to its left, would have been sufficient to allow the plaintiff's car to have safely cleared the path of the motorbus. In fact, on cross-examination the operator admitted that if he had started to stop a little sooner, or if he had swerved a little bit more to his left, the accident would not have happened. Viewing the evidence in the light most favorable to the plaintiff, as we must, and taking into consideration the classic elements which constitute a cause of action under the humanitarian doctrine, Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484, we are of the opinion that plaintiff made a submissible case on the defendant's failure to slacken the speed or to swerve its motorbus. The court, therefore, did not err in overruling defendant's motion for a directed verdict at the close of all of the evidence. Nelson v. Wabash Railroad Co., supra.

█ The second claim of error made by defendant is that the court erred in refusing to give its Instruction "A". Defendant's evidence tended to show that the plaintiff did not bring his eastbound auto-

mobile to a stop before making a left turn, but that proceeding at a speed of 25 to 35 miles an hour, and without any warning, plaintiff turned left from Market into Cardinal in front of and so close to defendant's westbound motorbus that the operator was unable by any means to avoid the collision. Defendant sought to submit the theory of its defense to the jury by offering two instructions, Instruction No. 2 and Instruction "A". Without the hypothesization of any facts, the jury was told in Instruction No. 2 that if when plaintiff entered a position of imminent peril it was then too late for the operator of the bus in the exercise of the highest degree of care to have avoided the accident by stopping, slackening speed, swerving, or warning, then plaintiff was not entitled to recover and its verdict should be for defendant. That instruction was given by the court. In refused Instruction "A" defendant hypothesized the evidence as to the location of the two vehicles, speed, and other facts which supported its defense, but incorporated therein was the following: "* * * and if you find that the plaintiff's automobile reached the west curb lane of Cardinal Avenue and made a left turn directly into the path of and in close and dangerous proximity to said moving motorbus *at a time when plaintiff knew, or in the exercise of the highest degree of care should have known that it was dangerous to do so and that plaintiff made such turn without a timely and adequate warning of his intention to do so * *.*" (Emphasis ours.) Defendant argues that the instruction merely submitted the version of the facts as supported by its evidence, and that the quoted part of the instruction is similar to language approved in Montgomery v. Sobel, Mo., 334 S.W.2d 112, 114. Of course, there was no need for two instructions submitting the same theory of defense, Pulley v. Scott, 362 Mo. 1217, 247 S.W.2d 767; Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60; and the giving or refusing of repetitious in-

structions is a matter which rests largely in the discretion of the trial court. Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W.2d 897. On that ground alone the court may have properly refused to give both. But there is a better reason why the court's refusal to give Instruction "A" was not erroneous. While defendant was entitled to submit the facts shown by its evidence which had the legal effect of establishing that there was no humanitarian negligence on its part, Montgomery v. Sobel, supra; Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, it had no right to interject into the case the plaintiff's antecedent and contributory negligence, neither of which has any part in the defense of a case submitted solely on the humanitarian doctrine. Fisher v. Williams, Mo., 327 S.W.2d 256; Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483; Smith v. Gulf, M & O R Co., Mo.App., 359 S.W.2d 388. The portion italicized had the effect of directing the jury's attention to plaintiff's negligence prior to the time plaintiff entered into the position of imminent peril, and was therefore erroneous. Carney v. Stuart, Mo., 331 S.W.2d 558; Catanzaro v. McKay, Mo., 277 S.W.2d 566. The most cursory comparison discloses that the instant instruction went far beyond the language approved in Montgomery v. Sobel, supra, upon which defendant relies. We conclude that the court did not err in refusing to give the instruction.

It is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, Acting P. J., ANDERSON, J., and FRANK W. HAYES, Special Judge, concur.